### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| **PENGU SWIM SCHOOL, LLC,** | § | **CIVIL ACTION NO.:** _____ |
| **PENGU SWIM SCHOOL RIVERSTONE,** | § | |
| **LLC** | § | |
| **PENGU SWIM SCHOOL CINCO RANCH** | § | |
| **LLC, and** | § | |
| **PENGU SWIM SCHOOL TOWNE** | § | |
| **LAKE, LLC** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **BLUE LEGEND, LLC, and BLUE** | § | |
| **LEGEND KATY, LLC** | § | |
| | § | |
| **Defendant.** | § | **JURY DEMANDED** |

## PLAINTIFFS' ORIGINAL COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF

Now into Court, through its undersigned counsel, come Plaintiffs, Pengu Swim School, LLC, Pengu Swim School Riverstone, LLC, Pengu Swim School Cinco Ranch, LLC, and Pengu Swim School Towne Lake, LLC (collectively "Pengu" or "Plaintiffs"), and file this Original Complaint and Request for Preliminary and Permanent Injunction against Blue Legend, LLC ("Blue Legend") and Blue Legend Katy, LLC ("Blue Legend Katy") (collectively, "Defendants"), and for cause would respectfully show the Court the following:

### I.
### NATURE OF THE ACTION

1.     This is a civil action to (i) enjoin trade dress infringement under 15 U.S.C. 1125(a); common law trade dress infringement; common law unfair competition; and common law unjust enrichment; and (ii) recover profits, damages, treble damages, exemplary damages, attorneys' fees, and costs.

1

2.      Pengu owns and operates swim schools located in the greater Houston, Texas area. Pengu's facilities utilize an inherently distinctive, non-functional, decorative design and arrangement which identifies and distinguishes Pengu's schools from those of its competitors. The trade dress, generally, includes rows of dressing rooms with distinctive features including shiplap siding, doors with ventilating gaps, and walls and trim painted in blues, greens, reds, and yellows; the interior wall of the pool area painted in varying shades of blue; and beach/boat décor in the facility. Pengu's trade dress has acquired secondary meaning in the marketplace, as consumers have come to identify Pengu's trade dress with Pengu's swim schools and Pengu's outstanding quality of service.

3.      Blue Legend and Blue Legend Katy, which sent an architect to visit Pengu prior to construction, have willfully and intentionally copied Pengu's trade dress design in their own swim schools, which are also located in the greater Houston, Texas area, and which utilize designs with strikingly similar elements to Pengu's trade dress. Blue Legend and Blue Legend Katy's infringement has caused blurring and tarnishment of Pengu's trade dress. Blue Legend and Blue Legend Katy's intentional infringement of Pengu's trade dress is likely to cause confusion among consumers. As a result of Blue Legend and Blue Legend Katy's infringement, Pengu has suffered damages. Pengu seeks the full range of remedies provided by law.

## II.
## PARTIES

4.      Plaintiff, Pengu Swim School, LLC is a limited liability company organized under the laws of the State of Texas.

5.      Plaintiff, Pengu Swim School Riverstone, LLC is a limited liability company organized under the laws of the State of Texas.

2

6.      Plaintiff, Pengu Swim School Cinco Ranch, LLC is a limited liability company organized under the laws of the State of Texas.

7.      Plaintiff, Pengu Swim School Towne Lake, LLC is a limited liability company organized under the laws of the State of Texas.

8.      Defendant Blue Legend, LLC is a limited liability company organized under the laws of the State of Texas. Blue Legend's office address, as registered with the Texas Secretary of State, is 5907 Yango Terrace Lane, Sugar Land, Texas 77479-4383 USA. Blue Legend may be served by serving its registered agent for process in Texas, Shuo Yang, at the same address.

9.      Defendant Blue Legend Katy, LLC is a limited liability company organized under the laws of the State of Texas. Blue Legend Katy's office address, as registered with the Texas Secretary of State, is 5907 Yango Terrace Lane, Sugar Land, Texas 77479-4383 USA. Blue Legend Katy may be served by serving its registered agent for process in Texas, Shuo Yang, at the same address.

### III.
### JURISDICTION AND VENUE

10.     The Court has personal jurisdiction over Blue Legend because Blue Legend is a resident of and business entity operating in this District.

11.     The Court has personal jurisdiction over Blue Legend Katy because Blue Legend Katy is a resident of and business entity operating in this District.

12.     The Court has federal question subject matter jurisdiction over this lawsuit under the Lanham Act, 15 U.S.C. § 1050, *et seq,* and 28 U.S.C. §§ 1331, 1338(a) because this action arises under the Constitution, laws, or treaties of the United States.

13.     The Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1338 and 1367(a) because all state law claims asserted in this action are so related to

the federal claims over which the Court has original jurisdiction that they form the same case or controversy under Article III of the United States Constitution.

14.     Venue lies in this District under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district. Specifically, Blue Legend and Blue Legend Katy own and operate, and provide swim school services in businesses in this District, businesses which infringe upon Pengu's protected trade dress.

### IV.
### CONDITIONS PRECEDENT

15.     All conditions precedent have been performed or have occurred pursuant to Fed. R. Civ. P. 9(c).

### V.
### FACTS

#### i.    DEVELOPMENT OF TRADE DRESS

16.     Pengu owns and operates swim schools located in the greater Houston, Texas area. Lothar and Tiffany Hofbauer ("the Hofbauers") are the owners of Pengu. The Hofbauers each have an extensive background in swimming and swimming instruction. Hofbauer Affidavit ¶ 2-3.

17.     In 1994, prior to starting Pengu, Lothar Hofbauer visited South Africa. In Cape Town, South Africa, he noticed the beautiful and strikingly colored Victorian-style changing houses which lined Muizenberg beach. Hofbauer Affidavit ¶ 4. The distinctive changing houses were arranged in rows along the beach, displayed A-frame roofs, and were comprised of bright color shades of red, blue, green, and yellow. Different structural elements of the houses contained different colors. For example, an individual changing house would have blue walls,

yellow doors, green door trim, and red roof trim. The usage of the colors varied at each hut. Lothar Hofbauer was captivated by the coloration and appearance of the changing houses.

18.     On the same South African trip, Lothar Hofbauer learned about the African Penguin colony near Muizenberg Beach. Hofbauer Affidavit ¶ 4.

19.     Building upon their education and experience in swimming and swim instruction, the Hofbauers decided to build a swim school, for families and children, with the mission to teach water safety and swimming in a safe and friendly environment. Hofbauer Affidavit ¶ 5.

20.     When deciding upon a name for their swim school, the Hofbauers remembered the South African penguins and recognized the penguin's potential as a friendly and positive ambassador to explain the importance of water safety, and to get children excited to learn life-saving water skills. The Hofbauers decided to name their school the "Pengu" swim school, incorporate the penguin into their logo, and to include strikingly bright colors as seen in some of the Muizenberg changing houses, into the design of their swim school. Hofbauer Affidavit ¶ 5.

21.     Prior to founding Pengu, the Hofbauers had extensive professional experience working as designers for their own separate company. As a result, the Hofbauers possessed a clear vision on how all design elements would be arranged and implemented. The Hofbauer's vision included, *inter alia*, elements of their changing huts, and the Pengu boat and beach themed interior design aspects. The Hofbauer's spent nearly three (3) years from 2011 to 2013 designing and implementing Pengu's trade dress. Hofbauer Affidavit ¶ 7. The Hofbauer's considered Pengu's design to be critical to Pengu's identity and branding, as there was no other swim school with similar trade dress or branding.

## ii.   DEFENDANTS' INTENTIONAL INFRINGEMENT

22.   Around November, 2018, the owners of Blue Legend and Blue Legend Katy visited Pengu's Riverstone location.[1] The owners expressed that they admired Pengu's design, and wanted to incorporate the same design in their own swim schools. Pengu expressly told Blue Legends and Blue Legend Katy's owners that Pengu's trade dress was unique, and the owners did not have permission to copy it. Hofbauer Affidavit ¶ 10. The owners also contacted Pengu's manager and construction superintendent regarding the design.

23.   In 2020, Defendants opened new indoor swimming facilities in Katy, Texas and Sugar Land, Texas. Hofbauer Affidavit ¶ 10. The interior decorative designs of Blue Legend and Blue Legend Katy's swim schools are nearly identical to Pengu's protected trade dress design. Hofbauer Affidavit ¶ 11. By copying Pengu's trade dress, Defendants took a short cut and illegal "free ride" and have utilized Pengu's distinctive trade dress design for profit in direct competition with Pengu.

24.   Blue Legend and Blue Legend Katy have willfully and intentionally copied Pengu's trade dress design in their own swim schools, which are also located in the greater Houston, Texas area. Blue Legend and Blue Legend Katy advertise their swim schools on the internet and social media, utilizing Pengu's trade dress design. Hofbauer Affidavit ¶ 11. Blue Legend and Blue Legend Katy's website also uses wording and images very similar to the wording and images on Pengu's website. Blue Legend and Blue Legend Katy's intentional infringement of Pengu's trade dress is likely to cause confusion among consumers.

---

[1] The registered office address for Blue Legend and Blue Legend Katy, 5907 Yango Terrace Lane, Sugar Land, Texas 77479, is located in a neighborhood adjacent to Pengu's Riverstone location.

25.     As a result of Blue Legend and Blue Legend Katy's intentional infringement, Pengu has suffered damages.

26.     The following is a brief pictorial comparison of Pengu and Defendants' schools:




FIG. 1 – (Pengu)                                    FIG. 2 – (Blue Legend Sugar Land)

The Blue Legend Sugar Land location, seen in Fig. 2, utilizes similar colors on each dressing hut. The colors vary between the paneling and trim/frames/doors. This is virtually identical to Pengu's design and style, seen in Fig. 1.




FIG. 3 – (Pengu)                                    FIG. 4 – (Blue Legend Katy)

Blue Legend's Katy location, seen in Fig. 4, utilizes a common light blue panel, but its door trim, doors, vented openings, shiplap siding, and A-frame roof style is otherwise virtually

identical to Pengu's, seen in Fig. 3. The overall appearance is substantially similar to Pengu's trade dress and likely to cause customer confusion.

 

FIG. 5 – (Pengu)                    FIG. 6 – (Blue Legend Sugar Land)

 

FIG. 7 – (Pengu)                    FIG. 8 – (Blue Legend Katy)

Blue Legend's Sugar Land location, seen in Fig. 6, utilizes a decorative design surrounding the swimming pool comprising several shades of blue arranged to resemble waves. Blue Legend's Katy location, Fig. 8, similarly uses shades of blue arranged in a wave pattern. Defendants' designs are confusingly similar to Pengu's trade dress, seen in Figs. 5 and 7.

### iii.   TRADE DRESS

27.     Pengu's schools are adorned with an inherently distinctive trade dress visual decorative design which identifies and distinguishes Pengu's schools from those of its competitors. *See* Hofbauer Affidavit ¶ 8.

28.     Pengu's trade dress includes, but is not limited to:

a.   red, blue, green and yellow colored dressing rooms;

b.   individual dressing rooms situated adjacent to one another in a row;

c.   alternating red, blue, green and yellow colored dressing room doors, door trim and roof trim;

d.   structural dressing room elements including A-frame roof style, shiplap siding, and ventilated doors;

e.   decorative design surrounding the swimming pool comprising several shades of blue arranged to resemble waves;

f.   swim lane dividers comprising alternating blue and red colored segments;

g.   beach sand floor color and surface throughout the lobby and pool area; and

h.   design, shape, and configuration of the swim school building interior and exterior.

Hofbauer Affidavit ¶ 6.

29.     Pengu's trade dress has acquired secondary meaning in the marketplace, as consumers have come to identify Pengu's trade dress with Pengu's swim schools and Pengu's outstanding quality of service. Pengu's trade dress is non-functional. Hofbauer Affidavit ¶ 8.

30.     Clearly, Blue Legend and Blue Legend Katy have willfully, deliberately, and intentionally infringed Pengu's trade dress.

## VI.
## <u>CLAIMS</u>

### i.   TRADE DRESS INFRINGEMENT – LANHAM ACT § 1125

31.     Pengu re-alleges, as if fully set forth herein, each allegation contained in the foregoing paragraphs, and states the following claim in addition or in the alternative to Pengu's other claims.

32.     Pengu's trade dress is eligible for trade dress protection. Pengu is registering, and/or has already registered for, trade dress protection. Pengu's trade dress, as used for the provision of swim school services, is inherently distinctive, or at the very least a unique and well-known dress which has obtained secondary meaning to the consuming public and professionals in the swimming industry. *See* Hofbauer Affidavit ¶ 8.

33.     Pengu's trade dress is not merely functional. Hofbauer Affidavit ¶ 8.

34.     Pengu is the senior user of the trade dress. Hofbauer Affidavit ¶ 8.

35.     Pengu's trade dress is used in commerce. Hofbauer Affidavit ¶ 7.

36.     Defendants took a short cut and illegal "free ride" and have utilized Pengu's distinctive trade dress design for profit in direct competition with Pengu.

37.     Defendants' deliberate and willful use of Pengu's trade dress in connection with their schools and swim services in Texas is likely to cause confusion among consumers as to the source of the services. Blue Legend and Blue Legend Katy's intentional infringement has caused blurring and tarnishment of Pengu's trade dress. Defendants' unauthorized use of Pengu's trade dress constitutes trade dress infringement under the Lanham act.

38.     Pengu has been damaged by Defendants' infringement of Pengu's trade dress and the likely confusion resulting from Defendants' use of the trade dress in connection with Defendants' swim schools and services.

39.     Pengu is entitled to statutory and treble damages and to recover its costs and attorneys' fees in bringing this action as set forth in the Lanham Act.

### ii.     TRADE DRESS INFRINGEMENT – TEXAS COMMON LAW

40.     Pengu re-alleges, as if fully set forth herein, each allegation contained in the foregoing paragraphs, and states the following claim in addition or in the alternative to Pengu's other claims.

41.     Pengu's trade dress is eligible for common law trade dress protection. Pengu's trade dress, as used for the provision of swim school services, is inherently distinctive, and is a unique and well-known dress which has obtained secondary meaning with the consuming public and professionals in the swimming industry. *See* Hofbauer Affidavit ¶ 8.

42.     Pengu's trade dress is not merely functional. *See* Hofbauer Affidavit ¶ 8.

43.     Pengu is the senior user of the trade dress. *See* Hofbauer Affidavit ¶ 8.

44.     Defendants' deliberate and willful use of Pengu's trade dress in connection with their schools and swim services in Texas is likely to cause confusion among consumers as to the source of the services. Blue Legend and Blue Legend Katy's intentional infringement has caused blurring and tarnishment of Pengu's trade dress.  Defendants' unauthorized use of Pengu's trade dress constitutes trade dress infringement under Texas common law.

45.     Defendants took a short cut and illegal "free ride" and have utilized Pengu's distinctive trade dress design for profit in direct competition with Pengu.

46.     Pengu has been damaged by Defendants' infringement of Pengu's trade dress and the likely confusion resulting from Defendants' use of the trade dress in connection with Defendants' swim schools and services.

### iii.    TEXAS COMMON LAW UNFAIR COMPETITION

47.    Pengu re-alleges, as if fully set forth herein, each allegation contained in the foregoing paragraphs, and states the following claim in addition or in the alternative to Pengu's other claims.

48.    Pengu's trade dress was created through extensive time, labor, skill, and money. Hofbauer Affidavit ¶ 7.

49.    Because Defendants have blatantly copied and infringed Pengu's trade dress, Defendants have used, and are using, Pengu's trade dress to gain an illegal "free ride," and are benefitting from that trade dress by using it to generate profit in the marketplace. *See* Hofbauer Affidavit ¶ 11.

50.    Defendants took a short cut and illegal "free ride" and have utilized Pengu's distinctive trade dress design for profit in direct competition with Pengu.

51.    Pengu has suffered commercial damage as a result of Defendants' actions. Specifically, Pengu has been foreclosed from enjoying the exclusive economic benefits derived from its own trade dress.

### iv.    TEXAS COMMON LAW UNJUST ENRICHMENT

52.    Pengu re-alleges, as if fully set forth herein, each allegation contained in the foregoing paragraphs, and states the following claim in addition or in the alternative to Pengu's other claims.

53.    Defendants have been unjustly enriched because they have wrongfully secured or passively received Pengu's trade dress, and it would be unconscionable to allow Defendants to retain this benefit.

54.     Pengu has expended significant time and effort to cultivate good will in its appearance and use of its trade dress. Hofbauer Affidavit ¶ 7. By wrongfully using Pengu's trade dress and depriving Pengu of its benefits, Defendants have obtained, and continue to obtain, benefits from using Pengu's trade dress.

55.     Defendants took a short cut and illegal "free ride" and have utilized Pengu's distinctive trade dress design for profit in direct competition with Pengu.

56.     Defendants will be unjustly enriched if they are able to keep the benefits of its use of Pengu's trade dress without payment for same.

57.     Pengu seeks damages from Defendants for unjust enrichment in an amount to be determined, specifically including the costs to obtain Pengu's trade dress, as well as additional damages for the diversion of trade, loss of profits, and dilution of value of Pengu's trade dress and the associated goodwill in the trade dress.

## VII.
### APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTION

58.     Pengu re-alleges, as if fully set forth herein, each allegation contained in the foregoing paragraphs, and states the following additional claim in addition or in the alternative to Pengu's other claims.

### 1.  Federal and State Authority for Injunctive Relief

59.     Pengu requests an injunction pursuant to 15 U.S.C. § 1116 (Lanham Act), and Tex. Civ. Prac. & Rem. Code § 65.011, to prevent current and future infringement of Pengu's trade dress. Under the Lanham Act, a court has power to grant injunctions to prevent the violation of any right of a trade dress owner under 15 U.S.C. § 1125. *See* 15 U.S.C. § 1116 ("The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may

deem reasonable, . . . to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title."); § 1125.

60.     Pengu further requests an injunction pursuant to Tex. Civ. Prac. & Rem. Code § 65.011, based upon principles of equity, and pursuant to the Court's supplemental jurisdiction over Pengu's state law claims. *See* Tex. Civ. Prac. & Rem. Code § 65.011

## 2.   Equitable Factors for Injunctive Relief

61.     A plaintiff seeking a preliminary injunction must establish (1) that plaintiff is likely to succeed on the merits, (2) that plaintiff is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in plaintiff's favor, and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Sunbeam Prods., Inc. v. West Bend Co.*, 123 F.3d 246, 250 (5th Cir. 1997). Plaintiff must also prove there is no adequate remedy at law.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006).  The decision to grant a preliminary injunction is within the sound discretion of the district court. *Hybritech, Inc. v. Abbott Labs.*, 849 F.2d 1446, 1451 (Fed. Cir. 1988); *Guy Carpenter & Co., Inc. v. Provenzale*, 334 F.3d 459, 463 (5th Cir. 2003) (the "ultimate decision for or against issuing a preliminary injunction is reviewed under an abuse of discretion standard").

## A.     Likelihood of Success on the Merits

62.     Pengu is substantially likely to succeed on the merits of its Trade Dress Infringement claims against Defendants, pursuant to 15 U.S.C. § 1125 ("Lanham Act"), in addition to its other claims. Pengu must show that (1) its trade dress is protectable, meaning it is inherently distinctive or has acquired secondary meaning; (2) the defendant's trade dress creates a likelihood of confusion; and (3) the trade dress is non-functional. *See Taco Cabana Int'l, Inc. v.*

*Two Pesos, Inc.*, 932 F.2d 1113, 1117–18 (5th Cir.1991), *aff'd*, 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992); *Security Ctr., Ltd. v. First Nat'l Sec. Ctrs.*, 750 F.2d 1295, 1298 (5th Cir.1985); *Fantastic Sams Franchise Corp. v. Mosley*, CV H-16-2318, 2016 WL 7426403, at *7 (S.D. Tex. Dec. 23, 2016).

### *Pengu Owns Protectable Trade Dress*

63.     Pengu owns common law trade dress rights under the Lanham Act because Pengu first used its trade dress in commerce in order to identify and distinguish its services from the services of its competitors on or about December 2013. Hofbauer Affidavit at ¶ 7; *See e.g., Fletcher's Original State Fair Corny Dogs, LLC v. Fletcher-Warner Holdings LLC*, 434 F. Supp. 3d 473, 483 (E.D. Tex. 2020). Pengu is the senior user of the trade dress. Hofbauer Affidavit ¶ 8; *see Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc*., 973 F.2d 1033, 1042 (2d Cir. 1992).

64.     Pengu's trade dress is entitled to protection because it distinguishes Pengu's services from those of others. Hofbauer Affidavit ¶ 8. Pengu's trade dress, as used for the provision of swim school services, is inherently distinctive, or at the very least a unique and well-known dress which has obtained secondary meaning to the consuming public and professionals in the swimming industry. *See Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 112 S. Ct. 2753,  120 L. Ed. 2d 615 (1992). Lothar Hofbauer is familiar with each competing swim school in the greater Houston area, and none of the competing swim schools (other than Blue Legend and Blue Legend Katy) utilize a similar trade dress. Hofbauer Affidavit ¶ 14.

65.     Pengu's trade dress is used in commerce. Hofbauer Affidavit ¶ 7; 15 U.S.C. § 1125. Pengu has multiple school locations across the greater Houston area. Pengu advertises nationwide on the internet and with social media, including Facebook, LinkedIn, and Twitter, and these advertising efforts contain images of Pengu's trade dress. Hofbauer Affidavit ¶ 9.

Pengu's schools, including images of elements of its trade dress, have been covered in articles by print and digital media outlets.[2] Hofbauer Affidavit, ¶ 9; *see also, e.g., Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*, 83 F. Supp. 2d 810, 820 (S.D. Tex. 1999) ("Quantum Fitness's products have received extensive and favorable reports in local and national health and fitness publications"). Pengu serves customers from across the city and state. Hofbauer Affidavit ¶ 9.

### *Defendants' Actions Create Likelihood of Confusion*

66.     When assessing the likelihood of confusion, courts consider a nonexhaustive list of so-called "digits of confusion," including: (1) the type of trade dress allegedly infringed, (2) the similarity between the two, (3) the similarity of the products or services, (4) the identity of the retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, and (7) any evidence of actual confusion. *See Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008).

67.     Pengu and Defendants' trade dress is nearly identical. Hofbauer Affidavit ¶ 11; *see* ¶ 26 pictorial comparison, *supra*. Pengu and Defendants both utilize trade dress comprising a unique interior decorative theme and design. *See* ¶ 28, *supra*, (a-h).  Defendants' infringing design includes Pengu's protected trade dress in *at least* the following respects:

    a.   red, blue, green and yellow colored dressing rooms;

    b.   individual dressing rooms situated adjacent to one another in a row;

---

[2]  *See, e.g.*, "Pengu Swim School Opens its Fourth Swim School . . ." https://www.prweb.com/releases/pengu_swim_school_opens_its_fourth_swim_school_in_towne _lake_area_of_cypress_texas/prweb16322574.htm; "Pengu Swim School coming soon . . ." https://communityimpact.com/local-news/houston/sugar-land-missouri-city/features/business/2018/01/05/pengu-swim-school-coming-soon-sugar-land/.

c.  alternating red, blue, green and yellow colored dressing room doors, door trim and roof trim;

d.  structural dressing room elements including shiplap siding, and ventilated doors;

e.  decorative design surrounding the swimming pool comprising several shades of blue arranged to resemble waves;

f.  swim lane dividers comprising alternating blue and red colored segments;

g.  beach sand floor color and surface throughout the lobby and pool area; and

h.  design, shape, and configuration of the swim school building interior and exterior.

Hofbauer Affidavit ¶ 12.

68.     In addition, Blue Legend Katy's design also overlaps with Pengu's protected trade dress because it utilizes an A-frame roof style for the dressing rooms. Hofbauer Affidavit ¶ 13.

69.     The products and services represented by the trade dress are identical. Hofbauer Affidavit ¶ 15. Like Pengu, Defendants operate swim school facilities and provide child and family friendly swim instruction in the greater Houston area. Pengu and Defendants each operate locations in close proximity of each other in Sugar Land, Texas, and Katy, Texas.[3] Hofbauer Affidavit ¶ 15.

70.     The identity of purchasers using Pengu and Defendants for swim school services is identical. Pengu and Defendants directly compete in the same market segment of child and family friendly swim school services.[4] Hofbauer Affidavit ¶ 15. Consumers searching for child

---

[3]  https://www.penguswimschool.com/locations/ (advertising Katy and Sugar Land locations); https://bluelegendswimschool.com/locations/ (advertising Katy and Sugar Land locations).

[4]  https://www.penguswimschool.com/ (advertising, *inter alia*, Baby Swim Classes from 4-14 months old); https://bluelegendswimschool.com/programs/30-minute/ (advertising courses for swimmers from as young as four months old to "cultivate kids' interests in swimming as well as promoting water safety").

and family-friendly swim lessons, especially in Sugar Land or Katy, are likely to discover and consider both Pengu's and Defendants' schools.

71.    The identity of the advertising media, and the type of advertising by both Pengu and Defendants utilizing the mark, is identical. Defendants' advertising efforts on social media and on the internet display the interior decoration and design of Defendants' schools, which are nearly identical to those displayed in Pengu's advertising. *See, e.g.,* depictions of Blue Legend and Pengu advertising, below.



Blue Legend Katy Ad (Instagram)                Blue Legend Sugar Land Ad (Facebook)




Pengu Ad (Facebook)                              Pengu Ad (Facebook)

72.     Defendants' intent in copying Pengu's trade dress was deliberate, willful, and exceptional. Representatives of Defendants began to visit Pengu and inquire about Pengu's facilities and trade dress sometime around November, 2018. Hofbauer Affidavit ¶ 10. Shortly thereafter, Defendants opened their own swim schools, which blatantly copied Pengu's trade dress. Hofbauer Affidavit ¶¶ 10-11.

73.     Clearly, based on the near identity of Pengu's trade dress design and Defendants' decorative design, the identical services marked by the design, the identical consumer base, identical advertising, and Defendants' deliberate and willful intent to infringe the trade dress, likelihood of confusion is apparent.

***Pengu's Trade Dress is Non-Functional***

74.     Pengu's trade dress is nonfunctional. Pengu's trade dress consists of an interior decorative design, which does not directly enhance the quality of swimming instruction or other services offered by Pengu. Hofbauer Affidavit ¶ 8. Pengu's trade dress is not "essential" and does not "affect the cost or quality" of the provision of swimming services. Hofbauer Affidavit ¶

8; *see TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 33, 121 S. Ct. 1255, 1261, 149

L. Ed. 2d 164 (2001). Neither is Pengu's trade dress a "functional feature . . . the 'exclusive use

of which would put competitors at a significant non-reputation-related disadvantage.'" *Id.* at

*356 (citing *Qualitex Co. v. Jacobson Products Co., Inc.*, 514 U.S. 159, 165, 115 S. Ct. 1300,

1304, 131 L. Ed. 2d 248 (1995). Defendants could still provide swim instruction services without

deliberately infringing Pengu's trade dress.

## B.     Irreparable Harm

75.     As set forth previously, the central purpose of a preliminary injunction is to

prevent irreparable harm. *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d

618, 628 (5th Cir. 1985). Where a likelihood of success on the merits is shown, as here, there is a

statutory presumption of irreparable harm. *See* Trademark Modernization Act of 2020 as

incorporated in Consolidated Appropriations Act, 2021 (Public Law 116-260, Subtitle B, Section

221); *see also Epic Tech, LLC v. Lara*, 4:15-CV-01220, 2017 WL 5903331, at *7 (S.D. Tex.

Nov. 29, 2017) ("By showing a likelihood of confusion . . . a plaintiff shows irreparable injury").

Aside from the statutory presumption, harm is also irreparable where there is no adequate

remedy at law, such as monetary damages. *Janvey v. Alguire,* 647 F.3d 585, 600 (5th Cir. 2011).

An injury is also irreparable when damages are extremely difficult to calculate, *Quantum

Fitness,* 83 F.Supp.2d at 831 (S.D.Tex.1999), or where the infringement involves direct

competitors. *See z4 Techs., Inc. v. Microsoft Corp*., 434 F.Supp.2d 437, 440 (E.D.Tex.2006).

76.     Aside from the statutory presumption, irreparable harm exists in this case because

damages to Pengu's reputation resulting from Defendants' trade dress infringement are

extremely difficult to calculate. *Quantum Fitness,* 83 F. Supp. 2d at 831; Hofbauer Affidavit ¶

17. Any customer drawn to Blue Legend or Blue Legend Katy by Defendants' infringing trade

dress may experience services out of Pengu's control which are unlike, or inferior to, Pengu's services, which is detrimental to the reputation of the Pengu in the industry, and may result in dilution of the value of the trade dress, lost customers, and/or lost confidence in Pengu's services—all of which is detrimental to Pengu. Hofbauer Affidavit ¶ 16. While this type of damage is easy to describe, it is very difficult to accurately calculate adequate monetary relief.

77.     Specifically, in a swim school where safety and health is paramount to marketing and goodwill, any adverse health or safety event occurring at the infringing facilities will irreparably, unfairly, and detrimentally impact Pengu's business goodwill. Hofbauer Affidavit at ¶ 16. This is the exact type of harm an injunction is designed to prevent.

78.     Irreparable harm has occurred, and will continue to occur, because Defendants are infringing and using Pengu's trade dress and providing swim instruction services in direct competition with Pengu. *z4 Techs*, 434 F.Supp.2d at 440 (when infringement involves direct competitors, finding of irreparable harm is appropriate); Hofbauer Affidavit ¶ 15.

79.     Irreparable harm has occurred because Defendants' infringing use of Pengu's trade dress in connection with the provision of swimming instruction services has created a substantial likelihood of confusion and actual confusion as to the source, affiliation, or sponsorship of the Pengu's swimming instruction services. 15 U.S.C. § 1114(1); *Epic Tech* ("By showing a likelihood of confusion . . . a plaintiff shows irreparable injury"). Defendants have used Pengu's trade dress in commerce in competition with Pengu. *See TGI Friday's Inc. v. Great Nw. Rests., Inc.,* 652 F.Supp.2d 763, 767 (N.D.Tex.2009) (concluding that likelihood of confusion is "evident" when a defendant used a plaintiff's exact marks). Further, Defendants use the Pengu trade dress in advertising on its website in connection with multiple locations, and on

social media platforms. Thus, in addition to the statutory presumption, Pengu has also been irreparably harmed under the presumptions of *Quantum Fitness*, *z4*, and *Epic Tech.*

80.     Defendants' actions and direct competition with Pengu have caused irreparable harm to Pengu by causing incalculable damage to Pengu's goodwill and reputation which cannot be remedied by a monetary award. Defendants' actions have created a likelihood of confusion as to the source of the swim instruction services offered in facilities utilizing the trade dress, and rendered Pengu unable to control the quality of those services. A preliminary injunction is therefore appropriate and required, pending a trial on the merits, in order to protect the status quo and prevent future injury.

### C.     Balance of the Equities

81.     The balance of hardships in this case strongly favors Pengu. If Defendants continue to operate using Pengu's trade dress, dilution and/or diminution of the trade dress's value, likelihood of confusion and incalculable damages will continue to occur to Pengu. Failure to enjoin Defendants from continuing to profit from Pengu's trade dress, from continuing to gain and solidify market share in the swim instruction services in the greater Houston and Texas markets, and from continuing to confuse the public as to the source and affiliation of swim school instruction taking place under Pengu's trade dress will work a highly prejudicial hardship on Pengu.

82.     In contrast, issuance of an injunction will not prevent Defendants from continuing to offer swim instruction, and from operating their businesses. To cease infringement of Pengu's trade dress, Defendants would simply need to make the necessary changes so that they no longer infringe Pengu's trade dress rights. As a result, an injunction would not work a hardship on Defendants.

### D.      Public Interest

83.      The injunctive relief requested would not adversely affect public policy or the public interest. The "public interest is <u>always</u> served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Quantum Fitness*, 83 F.Supp.2d at 832 (emphasis added); *see also T-Mobile USA Inc. v. Shazia & Noushad Corp.*, No. 3:08–CV–00341, 2009 WL 2003369, at *4 (N.D.Tex. July 10, 2009).

84.      Pengu is a small entrepreneurial company which seeks to mark and distinguish its outstanding quality of swimming instruction from that of its competitors by using a distinctive trade dress, derived from the Hofbauers' own unique experiences. Companies such as Pengu should be able to rely on the trade dress laws to protect their intellectual property. In contrast, the trade dress laws should be applied as they were intended—to prevent the sort of deliberate, premeditated copying carried out by Defendants in this case.

85.      Plaintiff's request for injunctive relief is narrowly focused on the design and advertising of two business entities operating in the swim instruction industry in Houston and Texas. The requested injunction would impose no burden on the public at large, and would not interfere with any local, state, or federal public policy interest. Any alleged public interest or value in Defendants being permitted to continue to use Pengu's trade dress does not outweigh the public interest in preventing a party from infringing trade dress. The public must be able to rely on the laws of the United States to prevent this type of misconduct.

### 3. Pengu should not be required to post bond, or the required bond should be nominal; in the alternative, Plaintiff's bond should be limited to the minimum cost of ceasing infringement

#### a. No bond or nominal bond

86.     Pengu should not be required to post bond in support of the injunction. The amount of security required pursuant to Rule 65(c) is a matter for the discretion of the trial Court, and the Court may elect to require no security at all. *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (emphasis added) (citing *Corrigan Dispatch Company v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir.1978) (emphasis added)).

87.     A Court may require no bond or a nominal bond if, as here, the Plaintiff will likely succeed based on the strength of its case. *See, e.g., Moltan Co. v. Eagle-Picher Indus.,* 55 F.3d 1171, 1176 (6th Cir. 1995) (Plaintiff likely to succeed on strength of case; no bond required); *Scherr v. Volpe,* 466 F.2d 1027, 1035 (7th Cir. 1972) (same).

88.     Here, Pengu possesses an exceptionally strong likelihood of success on the merits. Given Defendants' clear willful, intentional infringement, and the overwhelming similarities between Pengu's trade dress and Defendants' designs, the Court should require no bond, or a nominal bond. Further, the strength of Pengu's case creates a statutory presumption of irreparable harm, making it even more likely that any issued injunction would be upheld. *See, e.g., Arkansas Best Corp. v. Carolina Freight Corp.*, 60 F. Supp. 2d 517, 521 (W.D.N.C. 1999) (requiring nominal $100.00 bond based upon strong likelihood of success on the merits, and the existence of a presumption of injury and harm, which meant that an injunction was likely to be upheld); *see also Sanderson Farms, Inc. v. Tyson Foods, Inc.*, CV RDB-08-210, 2008 WL 11363726, at *1 (D. Md. Apr. 25, 2008) (setting nominal bond where warranted by the circumstances).

89.     For example, the owners of Blue Legend and Blue Legend Katy visited Pengu's visited Pengu's Riverstone location. Hofbauer Affidavit ¶ 10. The owners also contacted Pengu's manager and construction superintendent regarding the design. The owners expressed that they admired Pengu's design, and wanted to incorporate the same design in their own swim schools. Pengu unequivocally informed the owners that Pengu's trade dress was unique to Pengu, and that the owners did <u>not</u> have permission to copy it. Hofbauer Affidavit ¶ 10.

90.     Despite this clear and unambiguous warning, Defendants blatantly copied Pengu's trade dress in their own schools. Hofbauer Affidavit ¶ 10-11. A cursory comparison of Pengu's trade dress with Defendants' designs reveals overwhelming similarities. Defendants did not arrive at their design and color scheme by chance—Defendants intentionally copied Pengu's trade dress.

91.     Evidence of Defendants' willfulness and intent to copy do not stop there. Defendants' infringing swim schools offer identical services and products as Pengu, directly compete in the market for children and family friendly swim school services. *See* notes 3-4, *supra.* Hofbauer Affidavit ¶ 15. Moreover, Defendants intentionally opened their schools in close proximity to Pengu's schools. Hofbauer Affidavit ¶ 15.

92.     Given the egregious facts underlying Defendants infringement, in addition to all other facts stated above, the Court should exercise its discretion to require no bond to enforce a preliminary injunction in this case. If a bond is required, it should be nominal for the reasons stated above.

93.     In the event that the Court finds a bond should be required, Pengu is willing to post bond.

### b. *Minimum bond to preliminarily remedy infringement*

94.     In the alternative, Pengu should be required to post only the minimum amount required for Defendants to preliminarily cease infringement. The amount of security required pursuant to Rule 65(c) is a matter for the discretion of the trial Court. *Kaepa*, 76 F.3d at 628.

95.     Where a Plaintiff demonstrates a strong likelihood of success on the merits, a court may find a relatively low bond is sufficient, and the court gives less weight to speculative harms the injunction may indirectly cause defendants to suffer. *TGI Friday's Inc*., 652 F. Supp. at 774; *see also Petro Franchise Sys., LLC v. All Am. Properties, Inc.,* 607 F. Supp. 2d 781, 801 (W.D. Tex. 2009) (". . . because Plaintiffs' likelihood of success on the merits is strong, this Court elects to resolve uncertainties as to the proper basis for calculation in their favor.").

96.     Here, as detailed above, Pengu possesses an exceptionally strong case and is very likely to succeed on the merits.

97.     To cease infringement of Pengu's trade dress, Defendants must close their businesses, find new non-infringing facilities, or preliminarily and/or permanently modify their design to eliminate infringement. Here, closure of Defendants' businesses is unnecessary at the preliminary injunction stage, and this remedy should not be reflected in the bond amount for a preliminary injunction.

98.     The most straightforward way for Defendants to temporarily suspend the confusion caused by Defendants' infringement is to re-paint and replace the color schemes characteristic of Pengu's trade dress, specifically including but not limited to repainting the wall surfaces surrounding the pool area to eliminate the wave pattern, repainting the changing rooms, and replacing swim lane dividers. In addition, Defendants should remove the A-frame trim on each dressing room.

99.     However, for purposes of a preliminary injunction, Pengu should not be required to post bond sufficient to finance Defendants' wholesale remodeling and repainting of more surfaces than necessary with an alternate color scheme, i.e., to create a windfall for Defendants should an injunction issue improperly.

100.    Pengu's bond for purposes of a preliminary injunction should thus be set at a minimum amount sufficient for Defendants to paint over the infringing aspects of their interior design and remove the A-frame trim on the dressing rooms.

101.    Repainting and trim removal alone, however, is likely insufficient to permanently eliminate confusion and cease infringement. Upon the entry of a permanent injunction, Defendants must additionally remove distinctive structural figures such as shiplap siding and ventilated doors, repaint and retexture sand-colored surfaces and floors, and remediate any other distinctive designs, shapes, and configurations of the swim school interior and exterior which are likely to cause confusion with Pengu's trade dress. Such changes may be sufficient to eliminate any likelihood of confusion among the public—but they should not be reflected in the bond amount for a preliminary injunction.

102.    As set forth above, Pengu should post no bond, a nominal bond, or a bond amount at the minimum amount required to accomplish repainting and trim removal in order to temporarily remedy infringement of Pengu's trade dress. Upon a trial on the merits and the issuance of a permanent injunction, however, additional changes including but not limited to those described above would be necessary.

### 4.   Relief Requested

103.    Pengu requests that this Court issue a preliminary injunction against Blue Legend and Blue Legend Katy, and their agents, employees, and representatives, enjoining them from

use, display, advertising, and dissemination of Pengu's trade dress design, and from providing swim instruction or similar services in any facility incorporating or displaying Pengu's trade dress, as specifically described herein for purposes of the preliminary injunction. Pengu further requests a permanent injunction of same, in addition to further remedial measures as described herein, following a trial on the merits.

104.    Pengu requests that this Court issue a preliminary injunction against Blue Legend and Blue Legend Katy, and their agents, employees, and representatives, enjoining them from engaging in any conduct or course of conduct likely to cause confusion, deception, or mistake with respect to Pengu's trade dress design or appropriate goodwill and reputation of same. Pengu further requests a permanent injunction of same, following a trial on the merits.

105.    But for a preliminary injunction against Defendants' use of Pengu's trade dress, Pengu will continue to suffer irreparable injury, as Pengu will continue to be foreclosed from the benefits of its trade dress, and will be forced to compete against its own trade dress in the marketplace.

106.    Further, but for a preliminary injunction against Defendants' use of Pengu's trade dress, Pengu will continue to suffer irreparable injury as a result of trade dress infringement, elimination of competitive advantage, loss of market share, public confusion as to the source of services provided pursuant to the trade dress, and reputational harm caused by Defendants' infringement.

## VIII.
## JOINT AND SEVERAL LIABILITY

107.    Pengu re-alleges, as if fully set forth herein, each allegation contained in the foregoing paragraphs, and states the following claim in addition or in the alternative to Pengu's other claims.

108.    The tortious actions committed by Blue Legend and Blue Legend Katy, as described herein, have caused an indivisible injury to Pengu, for which liability cannot be apportioned with reasonable certainty among the individual Defendants. Accordingly, Blue Legend and Blue Legend Katy are jointly and severally liable for the entirety of the damages to Pengu which have resulted from their actions as described herein.

## IX.
### DAMAGES

109.    As a direct and proximate result of Defendants' conduct, Pengu suffered injuries and damages, including but not limited to the following, in amounts to be determined at trial:

a.      Lost earnings;

b.      Lost profits;

c.      Damage to earning capacity;

d.      Loss of trade dress;

e.      Price erosion;

f.      Loss of goodwill and reputation.

## X.
### EXEMPLARY AND TREBLE DAMAGES

110.    Pursuant to Tex. Civ. Prac. & Rem. Code § 41.003(a)(1), (2), and (3), exemplary damages may be awarded when the injury or harm for which the claimant seeks recovery results from malice, fraud, or gross negligence. Pengu seeks exemplary damages against Blue Legend and Blue Legend Katy in an amount to be determined, considering among other things, the degree of culpability, the extent to which the conduct offends a public sense of justice and propriety, the cost and inconvenience incurred by Pengu in prosecuting this action, and the net worth of Blue Legend and Blue Legend Katy.

111.    More specifically Blue Legend and Blue Legend Katy intentionally, willfully, and deliberately copied and infringed upon Pengu's trade dress with malice, and/or in an act of gross negligence.

112.    Pengu is entitled to treble damages for Defendants' willful violations of the Lanham Act, pursuant to 15 U.S.C. § 1117(a).

## XI.
### ATTORNEYS' FEES

113.    Pengu seeks to recover its reasonable and necessary attorneys' fees pursuant to the Lanham Act, 15 U.S.C. § 1117(a).

## XII.
### REQUEST FOR ORAL ARGUMENT

114.    Pursuant to Southern District of Texas Local Rule 7.5.A, Plaintiff respectfully requests a hearing and oral argument in support of this Application for Preliminary and Permanent Injunction.

## XIII.
### PRAYER

115.    For these reasons, Pengu asks for judgment against Defendants, jointly and severally, for the following:

a.    actual damages in an amount to be determined;

b.    exemplary damages in a sum to be determined by the trier of fact;

c.    disgorgement of profits;

d.    reasonable and necessary attorney's fees;

e.    statutory damages for trade dress infringement pursuant to 15 U.S.C. § 1117;

f.    prejudgment and post-judgment interest as allowed by law;

g.    costs of suit;

h.     preliminary and permanent injunction barring future infringement of Pengu's trade dress; and

i.     any and all other relief to which Plaintiffs may be entitled.

Respectfully submitted,

**MATTHEWS, LAWSON,
MCCUTCHEON & JOSEPH, PLLC**

*/s/ Terry B. Joseph*
Terry Joseph
Attorney-In-Charge
Texas Bar No. 11029500
SDTX Bar No. 11538
tjoseph@matthewsfirm.com
David M. Lodholz
Texas Bar No. 24070158
SDTX Bar No. 1055297
dlodholz@matthewsfirm.com
D. Ryan Cordell, Jr.
Texas Bar No. 24109754
SDTX Bar No. 3455818
dcordell@matthewsfirm.com
2000 Bering Drive, Suite 700
Houston, Texas 77057
713-355-4200
713-355-9689

**ATTORNEYS FOR PLAINTIFFS**