Case 4:21-cv-01525   Document 84   Filed on 04/08/23 in TXSD   Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
April 08, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PENGU SWIM SCHOOL, LLC, *et al.*, § § § *Plaintiffs*, § § vs. § § BLUE LEGEND, LLC, *et al.*, § § *Defendants*. § § § | Case No. 4:21-CV-1525 |

## **MEMORANDUM AND ORDER**[1]

This is a trade dress infringement case.[2] Pending before the Court are Plaintiffs Pengu Swim School, LLC's, Pengu Swim School Riverstone, LLC's, and Pengu Swim School Towne Lake, LLC's (collectively "Pengu") motion to exclude expert opinion testimony of Kenneth B. Germain, ECF No. 56,[3] and Defendant Blue Legend, LLC's and Blue Legend Katy, LLC's (collectively "Blue Legend") motion

---

[1] On August 19, 2021, based on the parties' consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Consent & Transfer Order, ECF No. 14.

[2] Trade dress is one type of trademark. *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 209-10 (2000). "A trademark is a distinctive mark, symbol, or emblem used by a producer or manufacturer to identify and distinguish his goods from those of others." *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 872 F. Supp. 2d 1154, 1174 (D. Colo. 2012) (quotation marks omitted). The Lanham Act provides a right of action for trade dress infringement. 15 U.S.C. § 1125(a).

[3] Blue Legend filed an opposition, ECF No. 56, and Pengu filed a reply, ECF No. 72.

1

to exclude expert opinion testimony of Rhonda Harper, ECF No. 61.[4] Pengu and Blue Legend are both swim schools offering swim lessons to children in the Greater Houston area. In this action, Pengu alleges that Blue Legend copied Pengu's swimming school's distinctive trade dress designs and used them on its own swim schools, creating a likelihood of consumer confusion between Pengu and Blue Legend. The issues before the Court are whether Blue Legends's expert Kenneth B. Germain and Pengu's expert Rhonda Harper should be excluded pursuant to Federal Rule of Civil Procedure 702. After thoroughly considering the pleadings, briefing, expert reports, and the law, the Court concludes that Mr. Germain's proposed testimony must be excluded because it nothing more than legal argument and invades the province of both the Court in instructing the jury on the applicable law, and the jury in determining the facts to be applied to the law. Regarding Ms. Harper's proposed testimony, the Court finds that the methodological issues Blue Legend identified affect the weight her testimony should be afforded, not its admissibility.

I.   BACKGROUND.

   A. Pengu's Trade Dress Claim.

Pengu owns and operates swim schools located in the greater Houston, Texas area. Pengu alleges that numerous aspects of its swim schools' unique design, including the decoration and arrangement of its dressing rooms, design surrounding

---

[4] Pengu filed an opposition, ECF No. 68, and Blue Legend filed a reply, ECF No. 74.

the swimming pool, and swim lane divider colors are inherently distinctive. Complaint, ECF No. 1 at 1. Further, Pengu alleges that its unique design has acquired secondary meaning as consumers have identified those elements with Pengu's swim schools. *Id*. at 8. In 2020, Blue Legend opened two new swim schools in Katy and Sugar Land, Texas. *Id*. at 10. Pengu alleges that the interior decorative designs of these swim schools are nearly identical to Pengu's. *Id*. at 11. Pengu claims that is trade dress is protectable and Blue Legend is infringing it.

### B. Kenneth Germaine's Report.

Kenneth B. Germain is Blue Legend's trademark expert. Germain Expert Report, ECF No. 56-1 at 5. Mr. Germain has over fifty years of experience in trademark law, both as an academic and practitioner. *Id*. He has testified as an expert on "approximately 15 occasions." *Id*. at 6. Here, Mr. Germain offers the following opinions: (1) "Plaintiffs have not presented sufficient facts showing that their asserted trade dress is distinctive as required for protection under the Lanham Act or at common law"; (2) "Plaintiffs have not presented sufficient facts showing that their asserted trade dress is nonfunctional as required for protection under the Lanham Act or at common law"; (3) "All of the digits of confusion I have analyzed favor Defendants." *Id*. at 8.

### C. Rhonda Harper's Report.

Rhonda J. Harper is Pengu's marketing, advertising, sponsorship, public

3

relations, branding, research, and consumer expert. Harper Expert Report, ECF No. 61-3 at 3. Ms. Harper has over thirty-five years of marketing experience and has been retained as an expert witness in a wide variety of matters. *Id*. at 7; Harper Expert Report, Appendix A, ECF No. 61-4. Ms. Harper designed and administered a survey to determine whether Blue Legend's trade dress is likely to cause consumer confusion. ECF No. 61-3 at 10. Ms. Harper formed the opinion that the results of her survey "strongly support a conclusion that there is a likelihood of confusion among the relevant universe regarding the source of the Defendants' trade dress as coming from, or being associated/affiliated with, the Plaintiffs due to the allegedly infringing trade dress." *Id*.

## II. STANDARD FOR EXPERT TESTIMONY.

Federal Rule of Evidence 702 governs the admissibility of expert testimony and reports. It provides that expert testimony will be allowed if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

District courts act as the gatekeeper in making determinations as to the admissibility of expert testimony. *See Daubert v. Merrell Dow Pharm., Inc.*, 509

U.S. 579, 597 (1993). As a preliminary matter, a district court must determine whether the proffered witness qualifies as an expert "by virtue of his knowledge, skill, experience, training, or education." *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quotation omitted). If the expert is qualified, the "overarching concern" becomes "whether the testimony is relevant and reliable." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 293 (5th Cir. 2019). To be reliable, expert testimony must "be grounded in the methods and procedures of science and be more than unsupported speculation or subjective belief." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012) (cleaned up). To be relevant, the expert's "reasoning or methodology [must] be properly applied to the facts in issue." *Id.* (quotation omitted).

"As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility." *Puga*, 922 F.3d at 294. A district court's role under Rule 702 "is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role—the court's role is limited to ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue so that it is appropriate for the jury's consideration." *Id.* As the United States Supreme Court explained: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."

5

*Daubert*, 509 U.S. at 596. "While the district court must act as a gatekeeper to exclude all irrelevant and unreliable expert testimony, 'the rejection of expert testimony is the exception rather than the rule.'" *Puga*, 922 F.3d at 294 (quoting FED. R. EVID. 702 advisory committee's note to 2000 amendment).

### III. DEFENDANT'S EXPERT'S OPINIONS ARE EXCLUDED AS IMPROPER LEGAL CONCLUSIONS.

Pengu argues that Mr. Germain's proposed testimony should be excluded in its entirety. Its primary argument is that Mr. Germain's proposed testimony will not be helpful to the trier of fact because it is properly understood as a legal argument that seeks to instruct the factfinder as to the applicable law and gives impermissible legal conclusions. ECF No. 56. Pengu does not challenge Mr. Germain's qualifications. In response, Blue Legend argues that Mr. Germain's proposed testimony does not consist of improper legal conclusions and will be helpful to the jury. ECF No. 64. The Court evaluates each of Mr. Germain's three opinions in turn.

#### A. Lawyers Can Be Experts If Their Testimony Will Assist Trier Of Fact In Understanding The Evidence.

The Fifth Circuit has found that "merely being a lawyer does not disqualify one as an expert witness." *Widespread Elec. Sales LLC v. Upstate Breaker Wholesale Supply Inc*, No. 3:20-CV-2541-K, 2022 WL 18028285, at *14 (N.D. Tex. Dec. 29, 2022) (quoting *Askanase v. Fatjo*, 130 F.3d 657 (5th Cir.1997)). Pursuant to Federal Rule of Evidence 702, expert testimony is admissible if it "will assist the

6

trier of fact to understand the evidence or to determine a fact in issue." Admittedly, Rule 704(a) provides that "[a]n opinion is not objectionable just because it embraces an ultimate issue." But neither Rule 702 nor Rule 704(a) allows an expert to offer legal conclusions. *C.P. Interests, Inc. v. Cal. Pools, Inc.*, 238 F.3d 690, 697 (5th Cir. 2001).

There is a difference between offering an opinion that may embrace the ultimate issue and offering a legal opinion that does nothing more than tell the trier of fact how to decide the ultimate issue. Opinions that are "nothing more than legal arguments" are not admissible. *Virginia Coll., LLC v. Martin*, No. 3:11CV682 DPJ-FKB, 2012 WL 6588700, at *1 (S.D. Miss. Dec. 17, 2012) (quoting *Snap–Drape, Inc. v. Comm'r of Internal Revenue*, 98 F.3d 194, 198 (5th Cir. 1996)) (affirming decision to strike expert testimony); *see also BNY Mellon, N.A. v. Affordable Holdings, Inc.*, No. 1:09CV226–SA–JAD, 2011 WL 2746301, at *1 (N.D. Miss. July 12, 2011) (excluding expert opinions on conclusions of law "because they do not assist the trier of fact in understanding the evidence, instead merely telling the trier of fact what result to reach"). "Lawyer experts cannot opine as to what law governs an issue or what the applicable law means because such opinions impermissible intrude upon the role of the court." *BNY Mellon*, 2011 WL 2746301, at *1. "Each courtroom comes equipped with a legal expert […] called a judge." *Id.*

7

### B. Expert's First Opinion Improperly Instructs The Jury On The Law To Apply And The Conclusion They Should Reach.

Mr. Germain's first opinion is that "Plaintiffs have not presented sufficient facts showing that their asserted trade dress is distinctive as required for protection under the Lanham Act or at common law." To arrive at this opinion, Mr. Germain first opines at length on the law and his interpretation of it. ECF No. 56-1 at 18-23. This straightforwardly invades the province of the court because there is "only one spokesman of the law, who of course is the judge." *Little v. Tech. Specialty Prod., LLC*, 940 F. Supp. 2d 460, 468 (E.D. Tex. 2013) (quoting *Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997)). Mr. Germain also applies the law to the facts and, rather than helping the jury understand the evidence, "merely tell the jury what result to reach." *United States v. Oti*, 872 F.3d 678, 692 (5th Cir. 2017) (quoting *Salas v. Carpenter*, 980 F.2d 299, 305 n.4 (5th Cir. 1992)). Moreover, distinctiveness is an essential element of Pengu's cause of action. "An attorney-expert's testimony may not include legal conclusions regarding essential elements of a cause of action, because such testimony would "supplant both the court's duty to set forth the law and the jury's ability to apply [the] law to the evidence." *B2A, LLC v. Commlog*, LLC, No. 09-CV-00528-WJM-BNB, 2011 WL 5569496, at *1 (D. Colo. Nov. 16, 2011) (quoting *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir.1988) (en banc)).

### C. Expert's Second Opinion Improperly Instructs The Jury On The Law To Apply And The Conclusion They Should Reach.

The same analysis applies to Mr. Germain's second opinion that "Plaintiffs have not presented sufficient facts showing that their asserted trade dress is nonfunctional as required for protection under the Lanham Act or at common law." ECF No. 56-1 at 8. As with his first opinion, Mr. Germain arrives at this opinion by describing the law and his interpretation of it. For example, Mr. Germain opines that "no one can acquire trade dress rights in a feature that is essential to the use or purpose of the goods or services, or that affects the cost or quality." ECF No. 56-1 at 33. Setting aside whether Mr. Germain's legal opinions are correct, they represent a clear invasion of the province of the court. *Little*, 940 F. Supp. at 468; *Askanase*, 130 F.3d at 673 (finding that lawyer experts cannot opine as to what law governs an issue or what the applicable law means because that function belongs to the court.). Mr. Germain then applied the law to the facts under both the traditional and competitive necessity tests for functionality to conclude that Pengu's trade dress is functional. ECF No. 56-1 at 34-48. This is impermissible. *Ross v. Rothstein*, 92 F. Supp. 3d 1041, 1074 (D. Kan. 2015) (excluding expert opinion reached by "applying those issues of law to the facts presented in this case").

### D. Expert's Third Opinion Improperly Instructs The Jury On The Law To Apply And The Conclusion They Should Reach.

Mr. Germain's third opinion is that "[a]ll of the digits of confusion I have

9

analyzed favor Defendants." ECF No. 56-1 at 8. As a general matter, courts may allow expert opinion testimony regarding these factors, or "digits of confusion," if the testimony would assist the trier of fact in understanding the evidence relating to the likelihood of confusion. *De Boulle Diamond & Jewelry, Inc. v. Boulle, Ltd.*, No. 3:12-CV-1462-L BF, 2014 WL 4413608, at *3–4 (N.D. Tex. Sept. 5, 2014). In this case, Mr. Germain's proposed testimony would not be helpful.

The first digit of confusion Mr. Germain analyzed was the type of mark—strength of the mark—concluding that Pengu's trade dress was weak even if protectable. ECF No. 56-1 at 49. Mr. Germain's conclusion on this digit of confusion is based on the legal conclusions in his first opinion, speculation regarding Pengu's reasoning for relying on Section 2(f)[5] claim to register its trade dress, and observations regarding deposition testimony and evidence that is absent from the record. *Id*. at 49-51.  As such, Mr. Germain's opinions regarding the type of mark will not be helpful to the jury in evaluating the facts of this case.

The second digit of confusion Mr. Germain analyzes is Blue Legend's intent.[6] *Id*. at 51. Here, Mr. Germain provides an explanation of the caselaw surrounding intent and then in a conclusory fashion declares that "I have seen no evidence in this

---

[5] "Except as expressly excluded in [certain preceding paragraphs], nothing in this chapter shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce." 15 U.S.C. § 1052 (f).

[6] In *HealthONE*, the court found Mr. Germain's opinions regarding a party's intent to be improper. 872 F. Supp. 2d at 1181.

10

case that Defendant intended to copy Plaintiffs' trade dress, nor to confuse any of their prospective customers." *Id*. at 54. As previously discussed, Mr. Germain invades the function of the court with testimony regarding the applicable law and that of the factfinder when he tells the jury how they should decide. Furthermore, the jury is capable of reviewing the evidence and determining whether Blue Legend intended to copy Pengu's trade dress. *Marlin v. Moody Nat'l Bank, N.A.*, 248 F. App'x 534, 541 (5th Cir. 2007) ("An expert's credentials do not place him in a better position than the [trier of fact] to draw conclusions about a defendant's state of mind."). As such, Mr. Germain's testimony on this digit will not be helpful to the jury.

The third digit of confusion Mr. Germain analyzes is actual confusion. ECF No. 56-1 at 54. Again, Mr. Germain begins with an overview of the applicable law. *Id*. at 54-56. He next evaluates the testimony of Pengu's corporate representative. *Id*. at 55. This will not be helpful to the jury, as it is perfectly capable of examining this testimony if admitted at trial. *De Boulle*, 2014 WL 4413608, at *3–4.

Finally, Mr. Germain compares the credentials and reports of Blue Legend and Pengu's survey experts, Hal Poret and Ms. Harper, respectively. *Id*. at 56-57. This is not proper expert testimony as it serves no other purpose than to bolster Mr. Poret's work and diminish Ms. Harper's. *Est. of Baker by & through Baker v. Castro*, No. CV H-15-3495, 2018 WL 11354976, at *3 (S.D. Tex. Sept. 18, 2018)

(excluding expert opinion in part because "her opinion serves only to bolster the credibility of Dr. Seguino's opinion testimony."). Further, Mr. Germain largely repeats the findings of Mr. Poret. ECF No. 56-1 at 55-56. Blue Legend argues that Mr. Germain's opinion is not redundant because he opines that "Mr. Poret's credentials are much more focused and extensive than Ms. Harper's." ECF No. 64 at 14. This is not proper expert testimony or helpful to the jury. To the extent that Blue Legend seeks to draw contrast between Mr. Poret and Ms. Harper's credentials, counsel may do this on direct and cross-examination.

The final digit of confusion Mr. Germain analyzed is the degree of care prospective purchasers are likely to exercise. ECF No. 56-1 at 57. Here, Mr. Germain concludes that "purchasers are likely to exercise great care in" purchasing swimming instructions. *Id*. His basis for this opinion is that swimming instructions are expensive, and parents will exercise care because of concern for their children's safety. *Id*. Mr. Germain has no specialized knowledge or experience that would qualify him to comment on the degree of care individuals will exercise in purchasing swimming lessons. Nor is Mr. Germain's observation "'beyond the realm of common knowledge and experience of a lay jury.'" *Bush v. Thoratec Corp.*, 13 F. Supp. 3d 554, 570 (E.D. La. 2014), *aff'd sub nom. Bush v. United States*, 802 F.3d 680 (5th Cir. 2015) (quoting *Beverly Enterprises–Virginia, Inc. v. Nichols*, 247 Va.

264, 441 S.E.2d 1, 3 (1994)). Therefore, Mr. Germain's proposed testimony regarding the degree of care will not be helpful to the jury.

Accordingly, Mr. Germain's proposed testimony is excluded pursuant to Rule 702.

IV. **BLUE LEGEND'S OBJECTIONS TO PLAINTIFF'S EXPERT'S TESTIMONY AFFECT WEIGHT, NOT ADMISSIBILITY.**

Blue Legend identifies six alleged flaws in Ms. Harper's report and argues that she should be excluded as an expert based on each individually, or because cumulatively, they render her proposed testimony unreliable. ECF No. 61 at 4. The specific issues Blue Legend identified are that Ms. Harper (1) surveyed the wrong universe of respondents; (2) failed to draw a representative sample; (3) failed to replicate the marketplace conditions; (4) asked biased confusion questions; (5) failed to use a proper control group or control questions; and (6) failed to use images that represented the parties' respective trade dress. ECF No. 61 at 4.[7]

"[T]he general rule is that 'methodological flaws in a survey bear on the weight the survey should receive, not the survey's admissibility.'" *Honestech, Inc. v. Sonic Sols.*, 430 F. App'x 359, 361 (5th Cir. 2011) (citing *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 488 (5th Cir. 2004)). However, "a survey can be so

---

[7] Blue Legend also seeks to exclude open-ended responses to Ms. Harper's survey results "to the extent Plaintiffs intent [sic] to offer them into evidence" and as unduly prejudicial under Rule 403. ECF No. 61 at 14. Blue Legend's motion in this regard is premature. It may raise such objections when Pengu offers the survey results into evidence.

badly flawed that it cannot be used to demonstrate the likelihood of consumer confusion." *Viacom Int'l v. IJR Cap. Invs.*, L.L.C., 891 F.3d 178, 197 (5th Cir. 2018) (internal quotation marks omitted). The flaws Blue Legend identified bear on the weight Ms. Harper's proposed testimony should be given, not its admissibility, and may be addressed on cross-examination.

Blue Legend first contends that because Pengu's swim schools are in Katy and Sugar Land, a proper universe of potential customers must be drawn from those cities. ECF No. 61 at 5. Based on its review of Ms. Harper's report, only thirteen percent of survey respondents fit Blue Legend's criteria, while the remainder of respondents were drawn from nearby Fort Bend, Wallace, and Harris counties. As a result, Blue Legend argues that exclusion of Ms. Harper's proposed testimony is proper. Blue Legend offers no support for its contention that residents of Fort Bend, Wallace, and Harris Counties are not potential purchasers of Pengu's services. However, even if it had done so, arguments that surveys "failed to survey the proper universe" affect weight. *In re Scotts EZ Seed Litig.*, No. 12-CV-4727 (VB), 2017 WL 3396433, at *8 (S.D.N.Y. Aug. 8, 2017); *see also Shell Trademark Mgmt. B.V. v. Warren Unilube, Inc.*, 765 F. Supp. 2d 884, 892–93 (S.D. Tex. 2011) (declining to exclude expert because "an imperfect universe is not fatal to the surveys' admissibility.").

Second, Blue Legend asserts that Ms. Harper failed to draw a representative

sample because she did not ask respondents' their gender or whether they would purchase swim programs for themselves or for a child. ECF No. 61 at 6. Regardless of whether these alleged flaws yielded a non-representative sample, those issues are "directed toward weight and sufficiency of evidence." *Dataquill Ltd. v. Huawei Techs. Co.*, No. 2:13-CV-633, 2015 WL 12912360, at *2 (E.D. Tex. June 11, 2015) (denying motion to exclude expert for survey with non-representative sample.).

Next, Blue Legend argues that Ms. Harper's proposed testimony should be excluded because her survey used "suggestive presentations of schools as being in close proximity" and "biased presentation of images." ECF No. 61 at 7. Blue Legend does not explain either of these complaints, relying instead on these conclusory statements and directing the Court to review its expert's report containing more detailed criticisms of Ms. Harpers survey. *Id*. ("as discussed by Mr. Poret, Ms. Harper's survey did not replicate market conditions").

Blue Legend's argument fails. "'Judges are not like pigs, hunting for truffles buried in briefs.'" *Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 468 (5th Cir. 2003) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). The court will not "scour the party's various submissions to piece together appropriate arguments. A court need not make the lawyer's case." *Id*. at 468 n.1 (quoting *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995)) (internal quotation marks

omitted). Thus, Blue Legend has failed to properly brief this point and it is denied on that basis.

Notwithstanding Blue Legend's failure, a review of its expert report does not provide a basis to exclude Plaintiff's expert's testimony. As to Blue Legend's complaint that Ms. Harper used "suggestive presentations of schools as being in close proximity," Mr. Poret's criticism is that competitive proximity was exaggerated because it did not include any third-party service providers in its array. ECF No. 61-8 at 15-16. Recently, in *Luckenbach Texas, Inc. v. Engel*, the district court rejected similar complaints, finding that "any alleged deficiencies in Wind's implementation of that [survey] methodology are properly addressed through cross-examination at trial." No. A-19-CV-00567-DH, 2022 WL 16857410, at *6 (W.D. Tex. Oct. 13, 2022). Similarly, Mr. Poret complains of "biased presentation of images" in randomized order and from "extremely similar" angles. ECF No. 61-8 at 22-29. Blue Legend cites no caselaw supporting exclusion on this basis and the Court is aware of none. As such, this issue properly addressed through Mr. Poret's testimony and through cross-examination of Ms. Harper.

Fourth, Blue Legend contends that Ms. Harper's survey results should be excluded because they asked biased and suggestive questions. ECF No. 61 at 8. Specifically, Blue Legend complains that Ms. Harper's survey presented respondents with twice as many confusion choices as no confusion choices. *Id*. In

support of its position, Blue Legend relies on *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 488 (5th Cir. 2004). However, the circumstances in that case are different than those complained of here. In *Scott Fetzer*, the survey was excluded because its questions "suggest[ed] a link between plaintiff and defendant." *Id*. Blue Legend does not allege that any of Ms. Harper's questions suggested a link between Pengu and Blue Legend like the one found to be improper in *Scott Fetzer*. Accordingly, Blue Legend may question Ms. Harper about the choices in her survey on cross-examination.

Fifth, Blue Legend complains that Ms. Harper used an improper control group and asked improper control questions. ECF No. 61 at 9. Again, Blue Legend provides no explanation for these assertions and merely points the Court to its expert report. *Id*. Thus, this argument fails. *Coggin*, 337 F.3d at 468. Nonetheless, Mr. Poret criticizes the use of control images where the control school was decorated with "almost entirely white" color as opposed to primary colors both Pengu and Blue Legend use, and it failed to hold constant the non-trade dress features of the images. ECF No. 61-8 at 29-31. Additionally, the control group was shown six images while the test group was shown eight images. *Id*. at 31-32. Again, Blue Legend's criticism of Ms. Harper's methodology for administering the survey, in this case her control group, bears on weight. *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, No.

2:08-CV-16-MHS-RSP, 2013 WL 12138888, at *3 (E.D. Tex. Feb. 27, 2013) (declining to exclude expert based on party's criticism of survey's controls).

Blue Legend's sixth issue with Ms. Harper's proposed testimony is that her survey used inaccurate images that did not represent each parties' trade dress. ECF No. 61 at 10. Specifically, Blue Legend contends that four of the eight images used are not part of Pengu's complaint or its application for federal registration. ECF No. 61 at 11-12. Blue Legend also contends that seven of the eight images used are functional and cannot be considered protectable trade dress as a result. *Id*. at 12. Blue Legend also argues that Ms. Harper's use of an image depicting the colored changing room are not inherently distinctive and/or functional, and therefore inappropriately included. *Id*. Blue Legend identifies no caselaw supporting the assertion that an expert's report should be excluded on any of these bases. Thus, the argument fails.

The Court further finds that just as none of the alleged flaws in Ms. Harper's report are so severe as to require exclusion, when considered together, they also do not require exclusion.

V. **CONCLUSION.**

Therefore, Pengu's motion to exclude Mr. Germain as an expert, ECF No. 56, is **GRANTED** and Mr. Germain's proposed testimony is **EXCLUDED** pursuant to Rule 702. In addition, Blue Legend's motion to exclude Ms. Harper as an expert, ECF No. 61, is **DENIED**.

Signed on April 8, 2023, at Houston, Texas.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**