United States District Court
Southern District of Texas
**ENTERED**
August 29, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | § | |
| PENGU SWIM SCHOOL, LLC, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | Case No. 4:21-CV-1525 |
| | § | |
| BLUE LEGEND, LLC, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM AND ORDER[1]

This is a trade dress infringement case.[2] The parties are competing swimming schools offering swim lessons to children in the Greater Houston area.[3] In this action, Pengu alleged that Blue Legend copied Pengu's distinctive trade dress and used it in its own swim schools, creating a likelihood of consumer confusion between Pengu and Blue Legend. A trial was held from May 16, 2023 through May 19, 2023, with the jury returning a verdict in favor of Pengu.

---

[1] On August 19, 2021, based on the parties' consent, the case was transferred to this Court to conduct all proceedings pursuant to 28 U.S.C. § 636(c). Consent & Transfer Order, ECF No. 14.

[2] Trade dress is one type of trademark. *Wal-Mart Stores v. Samara Bros.*, 529 U.S. 205, 209–10 (2000). "A trademark is a distinctive mark, symbol, or emblem used by a producer or manufacturer to identify and distinguish his goods from those of others." *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 872 F. Supp. 2d 1154, 1174 (D. Colo. 2012) (quotation marks omitted). The Lanham Act provides a right of action for trade dress infringement. 15 U.S.C. § 1125(a).

[3] Plaintiffs are Pengu Swim School, Pengu Swim School Riverstone, LLC, Pengu Swim School Cinco Ranch, LLC, and Pengu Swim School Towne Lake, LLC (collectively, "Plaintiffs" or "Pengu"). Defendants are Blue Legend, LLC ("Blue Legend Sugar Land"), and Blue Legend Katy ("Blue Legend Katy"), LLC (collectively, "Defendants" or "Blue Legend").

Thereafter, the parties filed a series of posttrial motions. Pending before the Court are Pengu's motion for attorneys' fees, ECF No. 109,[4] Pengu's motion for enhanced damages, ECF No. 110,[5] Pengu's motion for permanent injunction, ECF No. 111,[6] Pengu's motion for entry of judgment on the jury verdict, ECF No. 112,[7] Blue Legend's motion for judgment as a matter of law, or in the alternative, motion for new trial, ECF No. 113,[8] and Blue Legend's motion for permanent injunction and setting aside or reducing award of profits, ECF No. 114.[9] Based on a thorough review of the briefing, record,[10] and applicable law, the Court finds that: (1) there is sufficient evidence to sustain the jury's findings that Pengu's trade dress acquired secondary meaning, there is a likelihood of confusion, and Pengu is entitled to disgorgement of Blue Legend's profits; (2) the jury's profit award should not be set

---

[4] Blue Legend filed a response, ECF No. 118, and Pengu filed a reply, ECF No. 126.

[5] Blue Legend filed a response, ECF No. 119, and Pengu filed a reply, ECF No. 124.

[6] Blue Legend filed a response, ECF No. 120, and Pengu filed a reply, ECF No. 123.

[7] Blue Legend filed a response, ECF No. 121, and Pengu filed a reply, ECF No. 125.

[8] Pengu filed a response, ECF No. 121, and Blue Legend filed a reply, ECF No. 127.

[9] Pengu filed a response, ECF No. 117, and Blue Legend filed a reply, ECF No. 114.

[10] The parties failed to order the transcript of the full trial and, other than a few trial exhibits, cited to virtually no evidence in the trial record in support of their various motions. Instead, Plaintiffs cited to some summary judgment evidence and Defendants made up citations to the hearing testimony as they recalled it. The parties' failure to cite to the trial transcript "alone provides a sufficient basis on which to deny" their motions. *FLOE Int'l, Inc. v. Newmans' Mfg. Inc.*, No. CIV. 04-5120 DWFRLE, 2007 WL 902809, at *4 (D. Minn. Mar. 12, 2007) (citing *White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir.1990)). "The jury verdict is not clearly unreasonable and will not be disturbed" where a party fails to "cite to exact passages in the record [and] attach excerpts of the transcript." *Bankston v. State of Ill.*, No. 93 C 39, 1994 WL 11614, at *2 (N.D. Ill. Jan. 3, 1994), *aff'd*, 60 F.3d 1249 (7th Cir. 1995).

aside, reduced, or increased; (3) Pengu is entitled to an award of attorneys' fees; and (4) Pengu is entitled to a permanent injunction enjoining Blue Legend from infringing upon Pengu's trade dress.

## I.   BACKGROUND

In 2013, Pengu swim schools opened for business in the Houston area. In 2020, Blue Legend opened two swim schools—one in Katy, Texas, and one in Sugarland, Texas, each within a few miles of Plaintiffs' schools in that area. Plaintiffs introduced evidence that Defendants used Pengu's total image and overall appearance in the Blue Legend swim schools, infringing on Plaintiffs' trade dress.

On May 19, 2023, a jury returned a verdict in favor of Pengu. Verdict, ECF No. 106. The jury found that Pengu proved that its trade dress was protected because it obtained secondary meaning as of August 2020, *id.* at 5, and Blue Legend willfully infringed Pengu's trade dress, *id*. at 6-7. The jury awarded Pengu Blue Legend's profits in the amount of $67,5000 from Blue Legend Sugar Land and $120,000 from Blue Legend Katy. *Id*. at 8.

## II.   STANDARD FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL.

"A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014) (quoting *SMI Owen Steel Co. v. Marsh USA, Inc.*, 520 F.3d 432, 437 (5th Cir. 2008) (per curiam) (citation and

internal quotation marks omitted)). Under Rule 50(b) "[a] motion for judgment as a matter of law should be granted if there is no legally sufficient evidentiary basis for a reasonable jury to find for a party." *Id*. (citation and internal quotation marks omitted).

At this stage, a court's "review of a jury's verdict is 'especially deferential.'" *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 675 (5th Cir. 2016) (quoting *SMI Owen Steel Co. v. Marsh U.S.A., Inc.*, 520 F.3d 432, 437 (5th Cir. 2008)). The court "view[s] the entire record in the light most favorable to the non-movant, drawing all factual inferences in favor of the non-moving party, and 'leaving credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts to the jury.'" *Aetna Casualty & Surety Co. v. Pendleton Detectives of Mississippi, Inc.*, 182 F.3d 376, 378 (5th Cir. 1999) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1300 (5th Cir. 1994)).

A court must deny a motion for judgment as a matter of law "unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 498 (5th Cir. 2012) (quoting *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235 (5th Cir. 2001)). "In deciding a Rule 50(b) motion, even if the court would reach a different conclusion as the trier of fact, the court is 'not free to reweigh the evidence or to re-evaluate credibility of witnesses.'"

*United States ex rel. Montcrieff v. Peripheral Vascular Assocs., P.A.*, No. SA-17-CV-00317-XR, 2023 WL 139319, at *4 (W.D. Tex. Jan. 9, 2023) (quoting *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 564 (5th Cir. 2001). In short, "[u]nless there was no credible evidence presented which might authorize the verdict, the jury's findings must stand." *Urban Developers LLC v. City of Jackson, Miss.*, 468 F.3d 281, 297 (5th Cir. 2006) (internal quotations omitted) (quoting *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 461 (5th Cir. 1995)).

Federal Rule of Civil Procedure 59(a) allows a party to move for a new trial. In deciding whether to grant a new trial, the court conducts an "assessment of the fairness of the trial and the reliability of the jury's verdict." *Wellogix, Inc. v. Accenture, LLP*, 823 F. Supp. 2d 555, 571 (S.D. Tex. 2011), *aff'd sub nom. Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867 (5th Cir. 2013) (citing *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991)). Although Rule 59 does not specify or limit the grounds necessary to support such a decision, the court may grant a new trial if it finds that "'the verdict is against the weight of evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed.'" *Vargas v. Manson Gulf, LLC*, 439 F. Supp. 3d 809, 813 (E.D. La. 2020) (quoting *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985)). "The party asserting the error has the burden of proving that the error was prejudicial." *Ball v. LeBlanc*, 792 F.3d 584, 591 (5th Cir. 2015) (citation omitted).

The decision as to whether to grant a new trial rests "within the sound discretion of the trial court[.]" *Foradori v. Harris*, 523 F.3d 477, 503–04 (5th Cir. 2008) (quoting *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982)). This discretion is even broader when the trial court denies, rather than grants, such a motion. *See Cates v. Creamer*, 431 F.3d 456, 460 (5th Cir. 2005) ("Where a motion for a new trial is granted, we scrutinize that decision more closely.").

## III.   BLUE LEGEND'S MOTION FOR JUDGMENT AS A MATTER OF LAW IS DENIED.

Blue Legend challenges the sufficiency of the evidence to support the jury's finding on four grounds. First, Blue Legend claims that there was insufficient evidence for the jury to find that Pengu's trade dress was protectable. ECF No. 113 at 6–16. Second, Defendants argue there was insufficient evidence for the jury to find there was a likelihood of confusion. *Id*. at 16–19. Third, Defendants assert that there was insufficient evidence for the jury to find that Blue Legend's infringement was willful. *Id*. at 19. Finally, Blue Legend contends that Pengu is not entitled to a disgorgement of Blue Legend's profits. *Id*. at 19–24. The Court finds that a reasonable jury could have found in Pengu's favor on each of these issues and Pengu is entitled to entry of judgment on the verdict.[11]

---

[11] For the same reasons, Blue Legend is not entitled to a new trial as it has failed to show that the verdict is against the weight of evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed. *Vargas*, 439 F. Supp. 3d at 813.

### A.     A Reasonable Jury Could Have Found That Pengu's Trade Dress Acquired Secondary Meaning.

Blue Legend argues that Pengu failed to present sufficient evidence for the jury to find that its trade dress acquired secondary meaning. ECF No. 113 at 12. According to Blue Legend, Pengu presented evidence relevant to only four of the seven factors considered in the Fifth Circuit. *Id*. Pengu responds that sufficient evidence was presented. ECF No. 116 at 8. The Court finds there is ample support for the jury's findings.

"Secondary meaning occurs when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 247 (5th Cir. 2010) (quoting *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 476 (5th Cir. 2008)). In the Fifth Circuit, the seven *Pebble Beach* factors are considered in determining if a trade dress has acquired secondary meaning:

> (1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the trade dress.

*Id*.; *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 543 (5th Cir. 1998) ("*Pebble Beach II*"), *abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001). "No one factor is dispositive, and a finding of a likelihood

of confusion does not even require a positive finding on a majority of these digits of confusion." *T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F. Supp. 2d 888, 914 (S.D. Tex. 2014) (quoting *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008)).

Blue Legend first argues that the length and manner of use factor does not favor a finding of secondary meaning. ECF No. 113 at 12–13. According to Blue Legend, this is because only one Pengu swim school used Pengu's trade dress for seven years prior to Blue Legend's entrance into the market in August 2020. *Id*. Blue Legend does not explain why the Court should view this as significant or cite any caselaw that supports its position. In any case, evidence was presented at trial, and Blue Legend does not argue otherwise, that Pengu used its trade dress for seven years before Blue Legend entered the market. Therefore, the jury could have found that this factor favored a finding of secondary meaning. *Pengu Swim Sch., LLC v. Blue Legend, LLC*, No. 4:21-CV-1525, 2023 WL 3044607, at *8 (S.D. Tex. Apr. 21, 2023) (on summary judgment, finding that Pengu's use of its trade dress weighed in favor of secondary meaning).

Next, Blue Legend argues that Pengu's evidence regarding the volume of its sales is not relevant to the volume of sales factor because it did not "prove sales correspond[ed with Pengu's] trade dress." ECF No. 113 at 13. Again, Blue Legend does not provide any support for its contention that this factor requires a showing

that sales corresponded with a plaintiff's trade dress. Regardless, in the Fifth Circuit, no such requirement exists. *See Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 544 (5th Cir. 2015) (analyzing volume of sales factor without considering whether sales corresponded with use of mark). Because Pengu presented evidence of significant sales during the seven years in which it used its trade dress prior to August 2020, a reasonable jury could have found that this factor favored a finding of secondary meaning.

Third, Blue Legend contends that Pengu "presented little or no evidence of advertising effectiveness." ECF No. 113 at 14. However, Blue Legend does not argue that Pengu failed to present evidence of the amount and manner of its advertising. Nor could it. Pengu presented evidence that it spent hundreds of thousands of dollars on advertising that incorporated its trade dress. Such evidence alone does not demonstrate the effectiveness of the promotional efforts in altering the meaning of Pengu's trade dress in the minds of the public. However, Pengu also presented evidence demonstrating its growth in its revenue over that time, which the Fifth Circuit has found can lead to an inference of such efforts' effectiveness. *See Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 191 (5th Cir. 2018) ("The effectiveness of this advertising is evident from the success of product sales"). Therefore, a reasonable jury could have found that this factor favored a finding of secondary meaning.

Blue Legend next argues that Pengu failed to present evidence that Blue Legend copied Pengu's trade dress to take advantage of its reputation or perceived secondary meaning. ECF No. 113 at 15–16. In the Fifth Circuit, "evidence of deliberate copying can be a weighty factor if it appears the copying attempted to benefit from the perceived secondary meaning." *Beatriz Ball, L.L.C. v. Barbagallo Co., L.L.C.*, 40 F.4th 308, 320 (5th Cir. 2022). Here, there was substantial evidence of deliberate copying, including:

- Blue Legend obtained Pengu's blueprints and drawings when designing its facilities, PX-3;

- Blue Legend took photographs of Pengu's trade dress as "help for [Blue Legend's] design," PX-17;

- Blue Legend asked its architects to base the design of its changing rooms on pictures of Pengu's changing rooms, PX-5.

Further, Blue Legend repeatedly stressed that it wanted its color combination to be the same as Pengu's. *See* PX-6 ("I sen[t] to Ed before the photo 'I like (Pengu Swim School)'"). In that same email, Michael Yang recognized that Blue Legend might not be permitted to copy Pengu's color scheme, but, nonetheless, ultimately did so. *Id*.

Based on the evidence of deliberate copying presented to the jury, it could have inferred that the copying was done with the intention of taking advantage of Pengu's reputation and the perceived secondary meaning of its trade dress. Although there was no direct evidence that Blue Legend copied Pengu's trade dress for this

purpose, Blue Legend cites no caselaw, and the Court can find none, requiring direct evidence of a defendant's intent when copying. Instead, the jury was free to infer, in light of the totality of the evidence, that there was "no logical reason for the precise copying save an attempt to realize upon a secondary meaning that is in existence." *Ferrari S.P.A. v. Roberts*, 944 F.2d 1235, 1239 (6th Cir. 1991) (quoting *Audio Fidelity, Inc. v. High Fidelity Recordings, Inc.*, 283 F.2d 551, 558 (9th Cir. 1960)); *see also Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, 948 F. Supp. 2d 691, 704 (S.D. Tex. 2013).

Drawing all inferences in favor of Pengu, the jury was presented with more than a scintilla of evidence from which it was entitled to conclude that Pengu's trade dress acquired secondary meaning. *Clearline*, 948 F. Supp. 2d at 710.

### B. A Reasonable Jury Could Have Found That There Was a Likelihood of Confusion.

Defendants also argue there was insufficient evidence for the jury to find there was a likelihood of confusion. ECF No. 113 at 16–19.

In assessing whether there is a likelihood of confusion, courts in the Fifth Circuit consider: (1) similarity of the two products; (2) identity of retail outlets and purchasers; (3) identity of advertising media; (4) strength of the trade dress; (5) intent of the defendant; (6) similarity of design; (7) actual confusion; and (8) degree of care employed by consumers. *Yeti Coolers, LLC v. Blueworks, LLC*, No. 1:20-CV-01159-RP, 2021 WL 5828375, at *2 (W.D. Tex. Dec. 8, 2021), *report and*

*recommendation adopted*, No. 1:20-CV-1159-RP, 2021 WL 8444875 (W.D. Tex. Dec. 28, 2021). "[T]he absence or presence of any one factor ordinarily is not dispositive." *Pengu*, 2023 WL 3044607, at *13. Moreover, "'a finding of a likelihood of confusion need not be supported by a majority of the [digits].'" *Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 289 (5th Cir. 2020) (quoting *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 455 (5th Cir. 2017)).

The jury heard evidence from which they could conclude that there was a likelihood of confusion between Pengu and Blue Legend. Regarding the first and sixth factors—the similarity of the products and design—the jury was presented with photographs of Pengu and Blue Legend's facilities demonstrating the substantial similarities between the swimming schools. PX-11; PX-29. Additionally, Pengu's expert Rhonda Harper testified to survey evidence, which indicated that when shown photos of the two swim school facilities, survey respondents found them to be similar. The second factor—identity of retail outlets and purchasers—also could be found to favor a likelihood of confusion, as Pengu and Blue Legend both offer swimming lessons to children in the greater Houston area. Moreover, the evidence established that Blue Legend opened both of its facilities a short distance from Pengu's already existing facilities in Sugar Land and Katy. Although the jury heard no evidence of actual confusion, such evidence "is not necessary to a finding of a

likelihood of confusion." *Kodiak Prod. Co. v. Tie Down, Inc.*, No. CIV.A.4:03-CV-1474-Y, 2004 WL 2599353, at *10 (N.D. Tex. Nov. 12, 2004).

Moreover, there was substantial evidence that Blue Legend intentionally copied Pengu's trade dress. Although the intent factor is not necessary, it "'may alone be sufficient to justify an inference that there is a likelihood of confusion.'" *Future Proof Brands*, 982 F.3d at 289 (quoting *Streamline*, 851 F.3d at 455).

Accordingly, there was more than sufficient evidence for a reasonable jury to find that there was a likelihood of confusion.

**C.     There Was Sufficient Evidence For The Jury To Conclude That Pengu's Trade Dress Infringement Was Willful.**

Blue Legend argues that there was no evidence that its infringement was willful because no evidence of its state of mind was presented to the jury. ECF No. 113 at 19. This argument is without merit.

Again, Plaintiffs introduced extensive evidence of copying. For example, Mr. Yang directed the architects and contractors to copy Pengu while acknowledging that they might not be permitted to do so. *See* PX-6. Multiple emails documented Mr. Yang's instructions to copy, instructions to study Pengu, and desire to copy. *See* PX-5; PX-17. Further, Mr. Yang acknowledged that he went to Pengu's facility with his son, posing as a parent interested in obtaining swimming lessons for his child, while taking pictures of the facility that he sent to his architects to use in designing Blue Legend's facility. *E.g.,* PX-17. The emails and this admission present

13

direct evidence of intent to copy. Further, "[a] defendant's willful intent to infringe on a mark need not be proven directly, but may be inferred from circumstantial evidence of his conduct." *JUUL Labs, Inc. v. Chou*, 557 F. Supp. 3d 1041, 1055 (C.D. Cal. 2021), *reconsideration denied*, No. CV 21-3056 DSF (PDX), 2022 WL 4596556 (C.D. Cal. Aug. 22, 2022). Based on the evidence presented, the jury could have reasonably inferred that Blue Legend acted with an intent to infringe.

### D.   There Was Sufficient Evidence To Award Profits.

Blue Legend contends that Pengu is not entitled to a disgorgement of Blue Legend's profits. ECF No. 113 at 19–24.

"A plaintiff who proves infringement may be entitled to a defendant's profits, to the extent they are attributable to the defendant's unlawful use of plaintiff's trade dress." *Clearline*, 948 F. Supp. 2d at 707 (citing 15 U.S.C. § 1117(a); *Pebble Beach II*, 155 F.3d at 554–55). "An award of profits is not automatic, but discretionary." *Id.* In determining whether disgorgement is appropriate, courts in the Fifth Circuit evaluate whether disgorgement is equitable under the *Pebble Beach* factors:

> (1) whether the defendant had the intent to confuse or deceive; (2) whether sales have been diverted; (3) the adequacy of other remedies; (4) any unreasonable delay by the plaintiff in asserting his rights; (5) the public interest in making the misconduct unprofitable; and (6) whether it is a case of palming off.

*Pebble Beach II*, 155 F.3d at 554. Blue Legend argues that the *Pebble Beach* factors support setting aside or reducing the profits the jury awarded. ECF No. 114 at 10.

The Court considers each of the six *Pebble Beach* factors below.

>    **1.    *There was sufficient evidence to support a finding that Blue Legend intended to confuse or deceive.***

There is evidence in the record that Blue Legend intended to confuse or deceive. Specifically, there is substantial evidence of copying. For example, Blue Legend's owner Michael Yang repeatedly instructed his architects in designing Blue Legend's facilities to copy Pengu and specifically consult the photos he took of Pengu. *E.g.,* PX-17 ("The followings are the pictures I took from Pengu Swim School. Please check if there is any help for our design."). Multiple pictures of Blue Legend's facility in evidence show that it not only copied the trade dress but also copied many other features of Pengu's facilities. The result was that Blue Legend's facilities looked remarkably similar to, or almost indistinguishable from, Pengu's facilities. Although copying features that are not protected trade dress poses no violation, it shows Mr. Yang's intention was to copy Pengu's trade dress and its overall look, making Blue Legend's facility nearly indistinguishable from Pengu's except for the signage outside and at the front desk. Furthermore, the two Blue Legend facilities were opened close to Pengu's Sugar Land and Katy locations. A jury could infer that this showed an intent to confuse by directly competing within blocks of a facility that looked nearly identical to the new Blue Legend facility.

Furthermore, the jury determined that Blue Legend's infringement was willful after being instructed that "[w]illful means the infringement was done voluntarily,

intentionally, and with the specific intent to cause the likelihood of consumer confusion." Tr. Transcript 164:8–22, ECF No. 129. The jury's determination supports the conclusion that Blue Legend intended to deceive or confuse—and thereby sought to appropriate Pengu's goodwill—which in turn supports disgorgement of profits. *See Neal Techs., Inc. v. Unique Motorsports, Inc.*, No. 4:15-CV-385, 2017 WL 2903175, at *6 (E.D. Tex. Jan. 20, 2017) ("A jury finding of willfulness can equate to a finding that the defendant had the intent to confuse or deceive.").

### 2.   *There was sufficient evidence to support a finding of diverted sales.*

The second *Pebble Beach* factor is diverted sales. Blue Legend contends that the "evidence at trial did not demonstrate" that any of Pengu's sales were diverted. ECF No. 114 at 11. However, there was sufficient evidence that a reasonable jury could infer that sales were diverted. Pengu and Blue Legend are both swim schools offering lessons to children in Sugar Land and Katy, making them direct competitors. The jury also heard testimony that Pengu's revenue did not achieve its pre-pandemic growth trajectory after Blue Legend opened. *Reservoir, Inc. v. Truesdell*, 1 F. Supp. 3d 598, 619 (S.D. Tex. 2014) (finding factor favored disgorgement where there was testimony of a drop in sales); *cf. Gibson Brands, Inc. v. Armadillo Distribution Enterprises, Inc.*, No. 4:19-CV-358, 2022 WL 3008501, at *8 (E.D. Tex. July 28, 2022), *motion for relief from judgment denied*, No. 4:19-

CV-00358, 2023 WL 2815156 (E.D. Tex. Apr. 6, 2023) (finding that diversion of sales factor did not favor disgorgement where party failed to present evidence of "decline of sales, or other loss").

More significantly, Blue Legend's growth indicates that there was a diversion of sales. Specifically, Ms. Jin Li gave swim lessons for three years at various facilities around Houston prior to opening the Blue Legend facilities with her husband, Mr. Yang. During that three-year period, Ms. Li instructed approximately 700 students. PX-18 at 3 (loan documents stated that "Blue Legend has been offering swimming lessons to more than 700 children and adults in the greater Houston area.").[12] However, upon opening its two facilities near Pengu in Sugar Land and Katy, Blue Legend *instantly* generated hundreds of thousands of dollars in sales revenue. A logical inference from this is that Blue Legend diverted sales from Pengu, particularly because most new businesses in new locations have a ramp up period before sales take off.

Although Blue Legend and Pengu are direct competitors, Blue Legend offers some classes that are different from Pengu's classes, including synchronized swim and competitive swim instruction. As a result, only a portion of its sales may have come at Pengu's expense, which the jury apparently accounted for in only awarding

---

[12] Ms. Li testified at trial that she had over a thousand students while teaching at other facilities. Her testimony conflicted with the contemporaneous loan documents and the jury may have discounted her testimony based on this inconsistency.

a only small portion of Blue Legend's profits to Pengu. Nonetheless, this evidence was sufficient for a reasonable jury to infer that Blue Legend diverted sales from Pengu. This factor weighs in favor of disgorgement.

### 3.   The adequacy of other remedies weighs in favor of disgorgement.

The third factor—adequacy of other remedies—weighs slightly in favor of disgorgement of profits. As discussed below, the Court will enter a permanent injunction—which Blue Legend does not oppose—enjoining Blue Legend from using Pengu's trade dress. "[A] permanent injunction should be able to prevent any *future* instances of infringement." *Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532, 546 (S.D. Tex. 2013) (citing *Pebble Beach*, 155 F.3d at 555) (emphasis added).

Plaintiffs argue that injunctive relief "will not compensate Pengu for Blue Legend's *past* infringement." ECF No. 117 at 14 (emphasis added). Pengu presented the jury with data showing a decrease in its revenue and profitability after the pandemic that at least minimally suggested that Pengu may have suffered actual damages because of Blue Legend's infringement. Based on this record, the Court concludes that injunctive relief is an adequate remedy for Pengu's future injury but may not be a completely adequate remedy for its past damages to the extent it suffered any. This factor weighs slightly in favor of disgorgement.

**4.  *There was sufficient evidence to support a finding that Pengu did not unreasonably delay asserting its rights.***

With respect to the fourth factor, unreasonable delay, the Court finds that Pengu did not unreasonably delay in asserting its rights to its trade dress. Pengu filed this lawsuit within four months of learning that Blue Legend was using its trade dress. ECF No. 114 at 13. A four-month delay to assess various options prior to suing is not unreasonable. *Reservoir,* 1 F. Supp. 3d at 620 (finding a five-month delay not unreasonable).

**5.  *There was sufficient evidence to support a finding that the public interest favored disgorgement of profits.***

The fifth factor, public interest, favors Pengu. Given that the jury found Blue Legend's conduct willful, its conduct was culpable and against the public interest. Further, there is a strong public interest in deterring infringement. *Reservoir*, 1 F. Supp. 3d at 619.

**6.  *There was no evidence that Blue Legend engaged in palming off.***

The "palming off" factor applies when a Lanham Act defendant attempts to pass off its goods as the plaintiff's goods. *Retractable*, 919 F.3d at 881. Pengu admits that "there is no direct evidence that Blue Legend misrepresented to the public that its services were Pengu's." ECF No. 117 at 16. Blue Legend utilized a distinct logo, branded colors (orange and blue), and offered specialty classes Pengu did not offer. *Hamdan v. Tiger Bros. Food Mart Inc.*, No. CV 15-412-BAJ-EWD, 2018 WL

3029991, at *8 (M.D. La. May 22, 2018), *report and recommendation adopted*, No. CV 15-00412-BAJ-EWD, 2018 WL 3028943 (M.D. La. June 18, 2018) (finding no palming off because of "significant differences in the signage, branding and products of the stores").

In sum, five of the six *Pebble Beach* factors weighed in favor of awarding Blue Legend's profits to Pengu. Accordingly, the Court finds that the award of Defendants' profits is appropriate and will not disturb the jury's finding on this issue. *See Clearline*, 948 F. Supp. 2d at 707 (holding jury was entitled to consider conflicting evidence and determine how much was appropriate to award).

## IV.   BLUE LEGEND'S MOTION FOR SETTING ASIDE OR REDUCING THE PROFIT AWARD IS DENIED.

Blue Legend asks the Court to set aside or reduce the profits the jury awarded Pengu. Blue Legend argues that profits should not be awarded because *Pengu* failed to show that Blue Legend's profits were attributable to its trade dress infringement. ECF No. 114 at 17. If the Court determines it is equitable to award Blue Legend's profits, however, it asks that the amount be reduced to reflect profits each Blue Legend facility earned. *Id*. at 21. In response, Pengu argues that Blue Legend's profits are attributable to infringement and that the jury correctly calculated its profit award. ECF No. 117 at 16-17. The Court addresses each issue in turn.

**A.     Plaintiff Is Not Required To Show Damages Are Attributable To Infringement Under The Lanham Act.**

Blue Legend's argument that Pengu had the burden to show damages were attributable to the infringement is baseless. Under the Lanham Act, plaintiffs seeking defendants' profits are not required to show the amount of profits attributable to the infringement; instead, the defendants bear that burden. The Lanham Act prescribes the damages available to a successful plaintiff as follows:

> the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover (1) defendant's profits; (2) any damages sustained by the plaintiff; and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits, ***the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed***.

15 U.S.C. § 1117(a) (emphasis added). The burden is on the infringer to prove which sales are not attributable to the wrongful acts and the deductible costs and expenses necessary to determine net profits. *Clearline*, 948 F. Supp. 2d at 707 (citing 1 McCarthy on Trademarks and Unfair Competition § 30:66).

The first Fifth Circuit infringement case to analyze the showing necessary to award disgorgement of a defendant's profits was *Maltina Corp. v. Cawy Bottling Co.*, 613 F.2d 582, 584 (5th Cir. 1980). Under the Lanham Act, the trial court recognized, "the plaintiff has the burden of showing the amount of the defendant's sales of the infringing product. The defendant has the burden of showing all elements

21

of cost and other deductions" from gross profits. *Id.* at 586. The trial court disallowed defendant's claimed expenses because it could not determine whether they were related to the sale of the infringing product or other products. *Id.* The Fifth Circuit affirmed, holding that the record on appeal afforded no support for the contention that the claimed expenses related to sales of the infringing product. *Id.*

Almost ten years later, the Fifth Circuit addressed the issue again in *Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 951 F.2d 684, 694 (5th Cir. 1992) ("*Pig Stands I*"). The *Pig Stands I* court reviewed whether the district court erred in its decision to "accept[] the jury finding of infringement but reverse[] its finding of unjust enrichment, essentially granting a j.n.o.v." *Pig Stands I,* 951 F.2d at 687. First, the Fifth Circuit noted that, under 15 U.S.C. § 1117(a), the

> trial court has wide discretion to increase or reduce the amount of profits recoverable by the plaintiff '[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive . . . according to the circumstances of the case.' Under an abuse of discretion standard, we would have little difficulty upholding the trial court's determination that monetary relief is not warranted.

*Pig Stands I,* 951 F.2d at 694. Noting that the trial court's setting aside the jury verdict changed the standard of review, the Fifth Circuit's review of the evidence found Hard Rock "sold the pig sandwiches knowing of plaintiff's mark," not "to profit from the mark but rather in simple disregard of plaintiff's rights." *Id.* at 695. Given the high degree of success Hard Rock enjoyed worldwide and the fact that plaintiff was essentially out of business before Hard Rock began using the mark in

Dallas, the evidence militated against the existence of any motive to seek an association or to use the pig sandwich to promote its overall restaurant operations. *Id.* Plaintiff further admitted it did not lose any sales to Hard Rock. *Id.* "While the diversion of sales is not a prerequisite to an award of profits, it is one of the factors to be considered." *Id.* (citing *Maltina Corp.*, 613 F.2d at 585) (cleaned up).

In affirming the district court, the court of appeals concluded that "the evidence before the jury simply was not of the quality and weight necessary to support a finding of unjust enrichment" because "'Hard Rock "would have sold just as many pig sandwiches by any other name" and that "there is no basis for inferring that any of the profits received by [Hard Rock] from the sale of pig sandwiches are attributable to infringement." *Id.* at 696 (quoting the district court).

Plaintiff sought an *en banc* hearing on the panel's decision, arguing that the ruling was inconsistent with *Maltina. Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.*, 966 F.2d 956, 957 (5th Cir. 1992) ("*Pig Stands II*"). In rejecting a rehearing *en banc*, the Fifth Circuit opined that there was no conflict because "profits were not awarded" "solely on the lack of evidence showing that any of [Hard Rock's] profits were the result of its infringement of the mark." *Id*. The Fifth Circuit recognized that the infringer bore the burden of showing profits were not attributable to the infringement:

> If it can be shown that the *infringement had no relation to profits made*
> by the defendant, that some purchasers bought goods bearing the

infringing mark because of the defendant's recommendation or his reputation or for any reason other than a response to the diffused appeal of the plaintiff's symbol, ***the burden of showing this is upon the poacher***. The plaintiff, of course, is not entitled to profits demonstrably not attributable to the unlawful use of his mark.

*Id.* (citing *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 124

(9th Cir. 1968) (quoting *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*,

316 U.S. 203, 206 (1942))) (emphasis added).

As the Supreme Court has long recognized:

[t]he burden is the infringer's to prove that his infringement had no cash value in sales made by him. If he does not do so, the profits made on sales of goods bearing the infringing mark properly belong to the owner of the mark. There may well be a windfall to the trade-mark owner where it is impossible to isolate the profits which are attributable to the use of the infringing mark. But to hold otherwise would give the windfall to the wrongdoer.

*Mishawaka*, 316 U.S. at 206–07. This remains the law of the land. *Clearline*, 948 F.

Supp. 2d at 707. It is well established that profits may be presumed to be attributable

to infringement unless the defendant proves otherwise. *Id.* at 708.[13]

---

[13] Given this precedent and statutory language, no circuits require Lanham Act *plaintiffs* to demonstrate attribution. *Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 64 (1st Cir. 2008) (no attribution requirement); *Pillar Dynasty LLC v. New York & Co., Inc.*, 933 F.3d 202, 213 (2d Cir. 2019) (same); *Dewberry Engineers Inc. v. Dewberry Grp., Inc.*, No. 22-1622, 2023 WL 5062022, at *18 (4th Cir. Aug. 9, 2023) (*burden is on defendant* to "demonstrate that its profits were not so attributable"); *Laukus v. Rio Brands, Inc.*, 391 F. App'x 416, 424 (6th Cir. 2010) ("*burden is the infringer's* to prove that his infringement had no cash value in sales made by him. If he does not do so, the profits made on sales of goods bearing the infringing mark properly belong to the owner of the mark.'") (emphasis added) (quoting *Mishawaka*, 316 U.S. at 206–07); *WMS Gaming Inc. v. WPC Prods. Ltd.*, 542 F.3d 601, 608 (7th Cir. 2008), *as amended* (Sept. 16, 2008) ("*burden [is on infringer]* to show which portions of its gross income were not attributable to its infringing uses") (emphasis added); *Safeway Transit LLC v. Disc. Party Bus,*

Accordingly, contrary to Defendants' argument, the Court finds that the Lanham Act does not require *Pengu* to show that Blue Legend's profits were attributable to its trade dress infringement. Instead, the Lanham Act requires Blue Legend to show what amount should be deducted. At trial, Plaintiffs introduced evidence of Defendants' gross revenues and profits. Defendants introduced evidence showing the amount that should be subtracted from the Blue Legend's profits as not attributable to the infringement.

The Court instructed the jury to award only those damages attributable to the infringement but required Defendants to prove the attribution. Tr. Transcript 104:9–23, ECF No. 129 ("Blue Legend has the burden to show that its profits are not attributable to its infringement."). The jury's verdict demonstrates that they followed

---

*Inc.*, 954 F.3d 1171, 1180 (8th Cir. 2020) ("'[A] court may award a defendant's profits solely upon a finding that the defendant fraudulently used the plaintiff's mark.'") (quoting *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1539 (2d Cir. 1992)); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1012 (9th Cir. 1994) ("[*T*]*he burden is upon [defendant]* to prove that sales were 'demonstrably not attributable' to the infringing mark.") (emphasis added); *Gen. Steel Domestic Sales, LLC v. Chumley*, 627 F. App'x 682, 686 (10th Cir. 2015) (same); *Instant One Media, Inc. v. EzFauxDecor, LLC*, No. 22-11374, 2023 WL 2422196, at *2 (11th Cir. Mar. 9, 2023) (same).

*But see Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 464 (5th Cir. 2001) (a Lanham Act plaintiff who fails to present evidence that the defendant benefitted from the alleged infringement will not be permitted to recover any of the defendant's profits); *accord Retractable*, 919 F.3d at 876 (citing same). These Fifth Circuit cases are contrary to the language of the Lanham Act, Supreme Court precedent, and Fifth Circuit precedent, and are also in violation of its rule of orderliness. *See, e.g., Buckingham v. Booz Allen Hamilton, Inc.*, 64 F. Supp. 3d 981, 985 (S.D. Tex. 2014) (citing *United States v. Dial,* 542 F.3d 1059, 1060 (5th Cir. 2008) ("our rule of orderliness directs that 'one panel of this court cannot overrule the decision of another panel'")). Thus, this Court declines to follow this line of Fifth Circuit cases that are out of step with the law. *Clearline*, 948 F. Supp. 2d at 707.

25

the Court's instructions and took Defendants' evidence of reduction into account when awarding profits. The jury award was significantly less than the amount of Blue Legend revenues that Pengu introduced into evidence: $4,920,000.  Instead, the jury's award—totaling $187,500—considered Blue Legend's evidence of costs and that a significant portion of its revenues were not attributable to any infringement. Thus, the jury followed the instructions that Pengu was entitled only to that amount that was attributable to the infringement, largely consistent with Blue Legend's offered proof.

In sum, the jury correctly determined the profits subject to disgorgement based on the attribution of damages derived from infringement.

### B.      Equity Does Not Require The Jury's Profit Award To Be Adjusted.

The jury awarded Pengu $67,500 and $120,000 in profits from Blue Legend Sugar Land and Blue Legend Katy, respectively. ECF No. 106 at 8. Blue Legend's position is that the $120,000 award is not supported by the evidence. ECF No. 114 at 21–22. Specifically, according to Blue Legend's expert Doug Ellis, Blue Legend Katy only had $79,954 in profit. Therefore, Blue Legend contends that this was the maximum amount the jury could award Pengu from Blue Legend Katy.

Evidence was presented, which Blue Legend does not contest, that Blue Legend Katy had revenue of $1,603,354. The jury was not required to accept the entirety of Mr. Ellis's testimony in awarding profits. *Clearline*, 948 F. Supp. 2d at

708 (the jury was entitled to consider the experts' calculations and other factors to determine what amount of profits was an appropriate award). Thus, the Court sees no need to exercise its discretion to reduce the jury's profit award on this basis and Plaintiff is entitled to entry of judgment on disgorgement of Blue Legend's profits. *Id.*

## V.   PENGU'S MOTION FOR ENHANCED DAMAGES IS DENIED.

Pengu seeks enhanced damages, arguing that "there is substantial evidence of willful infringement and evidence of substantial damages not reflected in the jury award." ECF No. 110 at 7. According to Pengu, the jury's award of $187,500 "does not and cannot calculate the unquantifiable harm to Pengu's goodwill; intangible benefits accrued to Blue Legend as a result of their trade dress infringement; and enhanced damages are particularly appropriate where deterrence . . . is needed." *Id.*

Enhanced damages are to be used to "provide proper redress to an otherwise undercompensated plaintiff where imprecise damage calculations fail to do justice, particularly where the imprecision results from defendant's conduct." *ClearChoice Holdings, LLC v. Clear Choice Dental, PLLC*, No. CV H-14-03569, 2016 WL 8136622, at *8 (S.D. Tex. Dec. 23, 2016), *report and recommendation adopted*, No. CV H-14-3569, 2017 WL 416962 (S.D. Tex. Jan. 30, 2017), *modified in part*, No. CV H-14-3569, 2018 WL 1710173 (S.D. Tex. Apr. 9, 2018), *and modified in part*, No. CV H-14-3569, 2018 WL 1710173 (S.D. Tex. Apr. 9, 2018) (quoting *Taco*

27

*Cabana Int'l, Inc. v. Two Pesos, Inc.,* 932 F.2d 1113, 1127 (5th Cir. 1991), *aff'd sub nom. Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992)).

This is not such a case. Despite Pengu's assertion that it suffered unquantifiable harm, Pengu points to no evidence indicating that it suffered *any* harm. *Id*. (declining to award enhanced damages where plaintiff failed to show damages). Similarly, during closing argument, Pengu did not argue for any specific amount of damages, but instead requested the jury award what it thought the evidence warranted. Tr. Transcript 119:7-14 ("I'm not going to tell you how much money to put in here. I'm one of those people that's uncomfortable talking about money. That's for y'all to decide as a group once you're back in the jury room."). The jury awarded Pengu an amount of Blue Legend's profits that it determined was appropriate, deducting a significant portion based on the evidence of attribution and other costs. This is not a case where damages calculations were imprecise because of a defendant's stonewalling. *Clearline*, 948 F. Supp. 2d at 710 (declining to enhance damages). Plaintiffs failed to point to any evidence showing that it has been undercompensated.

Accordingly, the Court "declines to use its discretion to further enhance an already substantial damages award based on nothing more than Plaintiff's own assertions that [it] suffered additional un-quantified damages." *Clearline*, 948 F. Supp. 2d at 710.

## VI.   PENGU'S MOTION FOR ATTORNEYS' FEES IS GRANTED.

Pengu argues that this is an exceptional case entitling it to attorneys' fees. ECF No. 109 at 2. It reasons that this case is exceptional because Blue Legend engaged in intentional, deliberate, and willful infringement and litigation misconduct. *Id*. at 2-5. Blue Legend responds that Pengu's allegations are false and that this case is unexceptional. ECF No. 118 at 4. The Court agrees that this case was exceptional.

### A.   Attorneys' Fees Under the Lanham Act.

The Lanham Act permits the Court to award attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). The prevailing party is "'a party in whose favor judgment is rendered' or 'one who has been awarded some relief by the court.'" *All. for Good Gov't v. Coal. for Better Gov't*, 919 F.3d 291, 295 n.16 (5th Cir. 2019) (quoting *Kiva Kitchen & Bath, Inc. v. Cap. Distrib., Inc.*, 319 F. App'x 316, 322 (5th Cir. 2009)). A party need not win damages to be the prevailing party in the Lanham Act context. *See id*. (holding that a party obtaining judgment in the form of injunctive relief was the prevailing party). "The prevailing party has the burden to demonstrate the exceptional nature of a case by clear and convincing evidence." *Clearline*, 948 F. Supp. 2d at 717 (citations omitted).

"[A]n exceptional case is one where[:] (1) in considering both governing law and the facts of the case, the case stands out from others with respect to the

substantive strength of a party's litigating position; or (2) the unsuccessful party has litigated the case in an 'unreasonable manner.'" *Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016) (citing *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). "The district court must address this issue in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id*. (citing *Octane Fitness*, 572 U.S. at 554). "[F]rivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence" are all proper considerations. *Octane Fitness*, 572 U.S. at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

### B.    Willfulness Makes This Case Stand Out.

According to Pengu, Blue Legend's actions were exceptional because they were "intentional, deliberate, and willful." ECF No. 109 at 3. In support of this contention, Pengu points to the jury's finding of willfulness. *Id*. (citing ECF No. 106-1 at 3).  "However, a finding of willfulness for the purpose of awarding statutory damages does not per se establish that the case is exceptional." *Xpel Techs. Corp. v. Carlas Int'l Auto. Accessory, Ltd.*, No. SA-16-CA-01308-DAE, 2017 WL 9362801, at *8 (W.D. Tex. Nov. 27, 2017), *report and recommendation adopted*, No. 5:16-CV-1308-DAE, 2017 WL 9362565 (W.D. Tex. Dec. 19, 2017) (citing *Pig Stands I*).

Here, the jury found the infringement was willful on a preponderance standard. For the exceptional finding, the Court finds that Blue Legend infringed willfully by a clear and convincing standard. *See Clearline*, 948 F. Supp. 2d at 718 (denying fees where the willful violation did not meet the clear and convincing standard). There is no credible evidence that Blue Legend may have infringed unintentionally. *Id.* (denying fees where violation may have been unintentional). The extent of copying went beyond merely the protectable trade dress. The evidence was overwhelming, contained in many emails, photographs, and Pengu's blueprints and specifications sent to the architects to copy—all of which resulted in facilities that were nearly identical and situated only blocks apart. The evidence from Plaintiffs' expert showed that the similarity of the facilities was confusing to potential customers who viewed them as the same company or affiliated. Finally, Pengu's loss of profits after Blue Legend's opening and the robust profits Blue Legend made immediately upon opening indicates that sales were diverted. Further, the Court finds that the copying was a "brazen imitation." *Id.* Mr. Yang instructed his contractors to copy Pengu while acknowledging that they were not allowed to do so. Thus, the extent of the copying combined with the knowledge that it was not permissible takes this case out of the ordinary into the extraordinary category. Therefore, the clear and convincing evidence overwhelmingly establishes an intentional and willful case of copying with an intent to confuse customers and divert

sales from Pengu.[14]

Accordingly, the Court finds that this case is exceptional and warrants an award of Pengu attorneys' fees in the amount of $482,863.75.

## VII.   PENGU'S MOTION FOR PREJUDGMENT INTEREST AND COSTS IS GRANTED.[15]

Plaintiff seeks prejudgment interest on the award of profits. ECF No. 112 at 3. Prejudgment interest is not provided for under the Lanham Act, but the courts have discretion on awarding prejudgment interest in appropriate cases. *Clearline*, 948 F. Supp. 2d at 711-13. In this case, the Court finds that Plaintiffs sales were diverted resulting in higher profits for Blue Legend. Without the infringement, Plaintiffs would have use of money from the sales diverted. Therefore, the Court finds that the award of prejudgment interest on the profits at 5% is appropriate. *See id.* (allowing

---

[14] Pengu also contends that Blue Legend engaged in litigation misconduct making this an exceptional case. Because the Court finds the case is exceptional based on the evidence of willfulness, it need not reach this argument. However, the Court finds that these arguments are largely without merit. Pengu argues that Blue Legend forced it to bring a motion to compel responses to its discovery requests. ECF No. 109 at 4. Unfortunately, it is a fact that discovery disputes are a routine part of civil litigation. *See True Believers Ink 2, Corp. v. Russell Brands, LLC.*, No. 4:18-CV-00432, 2020 WL 2113600, at *15 (E.D. Tex. May 4, 2020) (declining to find case exceptional where party argued in part that filing of motion to compel amounted to litigating case in an unreasonable manner). Second, Pengu contends that Blue Legend refused to participate in the parties' second mediation in good faith. ECF No. 109 at 5. Pengu cites no supporting caselaw or any explanation in support of this argument and thus it fails. Finally, Pengu argues that Michael Yang falsely testified that he considered enrolling his son in swim lessons at Pengu. ECF No. 109 at 5 (quoting Terry Joseph Dec. ¶ 7, ECF No. 109-1). Although the Court finds Mr. Yang's testimony was obviously untruthful, it cannot conclude that Mr. Yang's testimony supports a finding that Blue Legend litigated this case in an unreasonable manner, and it was likely factored into the jury verdict.

[15] Plaintiffs also seek head start damages, ECF No. 112 at 3, but fail to indicate what those would be so the motion is denied for failure to adequately brief the issue.

prejudgment interest on plaintiffs' profits but not defendants' profits because, under facts of that case, plaintiffs would not have had use of that money).

As the prevailing party, Pengu seeks taxable costs. ECF No. 112 at 5. Rule 54 provides for taxable costs for the prevailing party. FED. R. CIV. P. 54(d). Under the local rules, Plaintiffs are required to submit their costs, affirming that they were necessary, reasonable, and performed in litigating the case. Local Rule 54.2.

## VIII.  PENGU IS ENTITLED TO A PERMANENT INJUNCTION.

The one thing the parties agree on is that Pengu is entitled to a permanent injunction, but they disagree as to the proper terms. ECF Nos. 111, 114. Pengu asks the Court to enjoin Blue Legend from using any of the elements that comprise its trade dress. ECF No. 111 at 4–5. On the other hand, Blue Legend asks the Court to enter an injunction requiring it to alter the design of its swim schools in specific ways that it contends are sufficient to protect Pengu's trade dress. ECF No. 114 at 5. The Court finds that an injunction enjoining Blue Legend from using Pengu's trade dress is warranted.

### A.     Standard For Granting Permanent Injunction.

A plaintiff seeking a permanent injunction must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is

warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Tinnus Enters., LLC v. Telebrands Corp.*, 369 F. Supp. 3d 704, 742 (E.D. Tex. Mar. 15, 2019) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "Courts must use discretion in determining whether to grant a permanent injunction without the application of broad classifications, categorical rules, or a presumption of irreparable harm." *Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*, No. CV 17-491, 2020 WL 375594, at *4 (E.D. La. Jan. 23, 2020).

### B.   The Record Supports Granting a Permanent Injunction.

The evidence in this case supports the entry of a permanent injunction. "'When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury, regardless of the actual quality of those goods or services.'" *Choice Hotels*, 940 F. Supp. 2d at 542 (quoting *Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*, 83 F.Supp.2d 810, 831 (S.D. Tex. 1999)). Here, the jury found that there was a likelihood of confusion. ECF No. 106 at 6. Further, Blue Legend and Pengu are direct competitors. *Clearline*, 948 F. Supp. 2d at 716. This loss of control demonstrates that money damages cannot adequately compensate Pengu for Blue Legend's unauthorized use of its trade dress. Because Pengu's goodwill and reputation cannot be easily quantified, there is no adequate monetary remedy. *Choice Hotels*, 940 F. Supp. 2d at 543.

34

The balance of hardships also favors granting Pengu equitable relief. Any hardship Blue Legend may face from the entry of a permanent injunction is outweighed by the irreparable harm Pengu is suffering. *Id.* Furthermore, because the jury found that Blue Legend's conduct was willful, ECF No. 106 at 7, balancing the hardships is not necessary, *Clearline*, 948 F. Supp. 2d at 715 ("If the infringement was willful, however, a court does not have to balance the hardships.").

Finally, a permanent injunction would serve the public interest by protecting consumers from confusion. *Totalcare Healthcare Servs., LLC v. TotalMD, LLC*, No. 4:22-CV-0789-P, 2022 WL 17337818, at *10 (N.D. Tex. Nov. 29, 2022), *reconsideration denied sub nom. Totalcare Healthcare Servs., LLC v. Total MD*, LLC, No. 4:22-CV-00789-P, 2022 WL 19976459 (N.D. Tex. Dec. 9, 2022) ("public has an interest in preventing confusion to consumers"). "The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Board of Regents of the University of Houston System v. Houston College of Law, Inc*, 214 F. Supp. 3d 573, 605 (S.D. Tex. 2016).

## C.    Scope of the Permanent Injunction.

The Court has broad discretion to fashion an appropriate injunction. *United States v. City of Houston, Texas*, No. CV H-18-0644, 2020 WL 2516603, at *37 (S.D. Tex. May 15, 2020). "As a general principle, 'injunctive relief should be no

more burdensome to the defendant than necessary to provide complete relief to the plaintiffs.'" *Lion Health Servs. Inc. v. Sebelius*, 635 F.3d 693, 703 (5th Cir. 2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)).

Pengu contends that principles of equity require Blue Legend be enjoined from using any of the seven elements comprising Pengu's trade dress. ECF No. 117 at 9. Pengu does not explain why a narrower injunction would not provide it relief. Nor does it cite to any caselaw requiring a court to enjoin an infringing party from using *any* element of plaintiff's trade dress. In fact, the Fifth Circuit recently rejected a plaintiff's "urg[ing] that the injunction must prohibit the use of any of the eight elements of trade dress." *Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.*, 46 F.4th 374, 386 (5th Cir. 2022), *cert. denied sub nom. Camellia Grill Holdings Inc. v. Grill Holdings, L.L.C*, 214 L. Ed. 2d 385, 143 S. Ct. 735 (2023). As "[t]rade dress refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product," the Court need only enter an injunction sufficient to protect Pengu's trade dress from infringement. *Amazing Spaces*, 608 F.3d at 250-51.

Accordingly, the Court will enter an injunction enjoining Blue Legend from using most of the elements of Pengu's trade dress. Specifically, Blue Legend must:

- Cease using a red, blue, green, and yellow color scheme on its dressing room doors, door trim, and roof trim. Defendants may use the shade of

blue from its logo in combination with other colors, like white and orange, but not red, green, or yellow.

- Cease using A-frame roof style dressing rooms.

- Cease using a decorative design surrounding its swimming pools comprising several shades of blue arranged to resemble waves.

- Not use lane dividers with alternating blue and red colored segments; but may continue to use blue and orange.

- Not use beach sand floor color and surface in their lobby and pool areas; but may continue to use pewter gray or nickel flooring.

This injunction is narrowly tailored "to remedy the specific action which gives rise to the order." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016).

## CONCLUSION

It is therefore **ORDERED** as follows:

- Pengu's motion for attorneys' fees. ECF No. 109, is **GRANTED**; Defendants shall pay Plaintiffs $482,863.75;

- Pengu's motion for enhanced damages, ECF No. 110, is **DENIED**;

- Pengu's motion for permanent injunction, ECF No. 111, is **GRANTED IN PART AND DENIED IN PART**. Blue Legend is ordered to permanently: (1) cease using a red, blue, green, and yellow color scheme on its dressing room doors, door trim, and roof trim. Defendants may use the shade of blue from its logo in combination with other colors, like white and orange, but not red, green, or yellow; (2) cease using A-frame roof style dressing rooms; (3) cease using a decorative design surrounding its swimming pools comprising several shades of blue arranged to resemble waves; (4) not use lane dividers with alternating blue and red colored segments; but may continue to use blue and orange; and (5) not use beach sand floor color and surface in their lobby and pool areas; but may continue to use pewter gray or nickel flooring;

- Pengu's motion for judgment on the verdict, ECF No. 112, is **GRANTED IN PART AND DENIED IN PART**, and Plaintiff shall recover prejudgment interest at 5%, and costs;

- Blue Legend's motion for judgment as a matter of law, or in the alternative, motion for new trial, ECF No. 113, is **DENIED**;

- Blue Legend's motion for permanent injunction and setting aside or reducing award of profits, ECF No. 114, is **GRANTED IN PART AND DENIED IN PART**.

SIGNED at Houston, Texas, on August 29, 2023.


_Dena Palermo_
_____

**Dena Hanovice Palermo**
**United States Magistrate Judge**